UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-CR-60200-DIMITROULEAS/SNOW

UNITED STATES OF AMERICA

v.

JONATHAN MARKOVICH, and
DANIEL MARKOVICH,

          **Defendants.**
_____/

## GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE EVIDENCE THAT MAY BE INEXTRICABLY INTERTWINED EVIDENCE OR EVIDENCE PURSUANT TO FED. R. EVID. 404(b)

Pursuant to Federal Rule of Evidence 404(b)(2)(3), the Scheduling Order [D.E. 183], and Local Rule 88.10(h), the United States of America hereby informs Defendants of its intent to introduce evidence at trial regarding Defendants' violation of Florida's anti-kickback/patient brokering statute, and their knowledge of such law. Such crimes under Florida State Law are not charged in this case, but are relevant to Defendants' criminal intent in terms of the fraud and kickbacks charges in the Indictment, show their knowledge and a lack of mistake, and further provide a basis for convicting J. MARKOVCH of the charged money laundering and bank fraud offenses. This evidence is, in the Government's view, direct evidence in its case in chief, or is inextricably intertwined with the charged conduct. This evidence may also potentially be admitted pursuant to Federal Rule of Evidence 404(b). In an abundance of caution, and in the interest of full disclosure, the Government notices such evidence as if it were subject to Federal Rule of Evidence 404(b).

1

I.      **The Proposed Evidence**

The Government will introduce evidence at trial that Defendants J. MARKOVICH and D. MARKOVICH, as the owners and operators of Compass Detox and WAR, employed a stable of patient recruiters who offered a web of illegal kickbacks in the form of cash payments, bus and train tickets, free flights, prescription medications, illegal drugs, "piggybacking" of one patient on another patients insurance, "scholarships" (i.e., admissions of patients without health insurance) in exchange for patients referring other patients, and other incentives to entice patients to attend Compass Detox and WAR.  Such conduct is described in the discovery already produced to Defendants, and is directly alleged in the health care fraud and wire fraud conspiracy [see D.E. 110, Count 1, Manner and Mean, at ¶ 5-6], and in the kickbacks conspiracy, and substantive kickback counts, charged against the Defendants in the Indictment, [id., Counts 10-18 & 22].

Specifically, the Government intends to introduce evidence that J. MARKOVICH, D. MARKOVICH, and other co-conspirators purchased or authorized the purchase of flights and other tickets for interstate travel for patients in exchange for the patients attending Compass Detox and/or WAR, and paid or authorized the payment of patients.  The Government will present evidence of both the aggregate purchases and payments, the pattern of those payments, and specific instances of those purchases.  The evidence will include witness, including patient, co-conspirator, and financial analyst testimony, documents (such as flight records, financial records, Facebook chats, emails, text messages, and patient files) substantiating those purchases and payments, as well as documents (such as emails and components of the patient files) evidencing the Defendants' and co-conspirators' intent in making these payments and purchases.  The evidence will show that these extensive kickback practices began in 2017 and continued until the

2

date the Defendants' were charged by criminal complaint in September 2020.

The Eliminating Kickbacks in Recovery Act of 2018, 18 U.S.C. § 220 et seq. ("EKRA"), was signed into law on October 25, 2018. It prohibits the solicitation and receipt of kickbacks by specific entities—recovery homes, clinical treatment facilities, and laboratories—including Compass Detox and WAR. Before EKRA was enacted, using kickbacks to procure patients and referrals for addiction treatment payable by private insurers was not prohibited under federal law (the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b et seq., applied to Medicare and Medicaid claims, and other federal health care programs).[1] However, such conduct was illegal under Florida State Law.[2] See Fla. Stat. § 817.505.

The alleged health care and wire fraud, and money laundering conspiracies at Compass Detox and WAR as charged in the Indictment, pre-dated the passage of EKRA, and are alleged to have begun in or around April 2017. [D.E. 110, at Counts 1, 24]. But even before EKRA was passed, Defendants' system of patient recruitment and kickbacks violated Florida law. And Defendants are alleged to have paid kickbacks as part of the overall health care fraud and wire fraud conspiracy charged in Count One before October 25, 2018. Such conduct constitutes possible 404(b) evidence. The United States seeks to introduce evidence that before October

---

[1] EKRA, by contrast, applies to kickback arrangements in the addiction treatment field related to services billed to and paid by any health care benefit program, as defined in EKRA (18 U.S.C. § 220(3)), and in 18 U.S.C. § 24(b), which includes federal health care programs, as well as private or commercial health insurance plans.

[2] The "Florida Patient Brokering Act," Fla. Stat. § 817.505, makes it a felony offense for any person, health care treatment facility, including a substance abuse treatment facility, to offer, pay, solicit, and/or receive any commission, bonus, rebate, kickback, or bribe, directly or indirectly, in cash or in kind, to induce the referral of patients, in return for referring patients or for the acceptance or acknowledgement of treatment from a health care provider or health care facility; or to aid or abet such conduct. See Fla. Stat. § 817.505.

2018, Defendants' violation of Florida's kickback laws was inextricably intertwined with, and necessary to explain the background and context of, the kickback conspiracy and substantive EKRA violations they are charged with post-October 2018, and the health care and wire fraud, and money laundering allegations as well.[3]  Such evidence is necessary to tell the story of the charged crimes, put them in context, and to show Defendants' knowledge and intent.

## II.     Legal Standard

**Inextricably Intertwined Evidence:**

Evidence of prior bad acts is not extrinsic under Rule 404(b) if it:  (1) arose out of the same transaction as the charged offense; (2) is necessary to complete the story of the crime; or (3) is inextricably linked with the charged offense.  United States v. Ellisor, 522 F.3d 1255, 1269 (11th Cir. 2008).  It is settled law that "[e]vidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if it is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury."  United States v. McClean, 138 F.3d 1398, 1403 (11th Cir. 1998) (quoting United States v. Williford, 764 F.2d 1493, 1499 (11th Cir. 1985)); see also United States v. Edouard, 485 F.3d 1324, 1344 (11th Cir. 2007) (holding that "evidence is inextricably intertwined with the evidence regarding the charged offense if it forms an 'integral and natural part of the witness's accounts of the circumstances surrounding the offenses to which the defendant was indicted.'"  (quoting United States v. Foster, 889 F.2d 1049, 1053 (11th Cir. 1989)).  There is no doubt the pre-EKRA kickbacks evidence the Government intends to introduce against the MARKOVICH Defendants

---

[3] Only J. MARKOVICH is charged with conspiracy to commit money laundering (Count 24), and substantive money laundering counts (Counts 25-33).

meet this standard. Such conduct arose out of the same transactions as the charged crimes, is necessary to explain the background of the kickbacks conspiracy, and is inextricably intertwined and indeed even direct evidence of the health care fraud and wire fraud conspiracy as alleged, and the kickback counts.

**Federal Rule of Evidence 404(b):**

Courts in this Circuit apply a three-prong test to assess the admissibility of evidence under Rule 404(b):

> First, the evidence must be relevant to an issue other than the defendant's character. Second, as part of the relevance analysis, there must be sufficient proof so that a jury could find that the defendant committed the extrinsic act. Third, the evidence must possess probative value that is not substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403.

United States v. Jernigan, 341 F.3d 1273, 1280 (11th Cir. 2003).[4] "A defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue." United States v. Zapata, 139 F.3d 1355, 1358 (11th Cir. 1998). ("The relevance of other crimes evidence to intent is determined by comparing the defendant's state of mind in committing both the extrinsic and charged offenses.").[5]

---

[4] As with any evidence, "the probative value of proffered 404(b) evidence must not be *substantially outweighed* by unfair prejudice." Jernigan, 341 F.3d at 1282 (internal quotations omitted) (emphasis in original). "This determination lies within the sound discretion of the district judge and calls for a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." Id.

[5] The Eleventh Circuit has recognized that Rule 404(b) is "a rule of inclusion, and . . . accordingly '404(b) evidence, like other relevant evidence, should not lightly be excluded when it is central to the prosecution's case.'" Id. (quoting United States v. Perez-Tosta, 36 F.3d 1552, 1562 (11th Cir. 1994)) (accord United States v. Stephens, 365 F.3d 967, 975 (11th Cir. 2004)). Rule 404(b) is a rule "of inclusion which allows

5

### III. **Argument**

It is plain that the health care fraud and wire fraud, EKRA, and money laundering conspiracies, and substantive charges of each, as alleged in the Indictment, are inextricably intertwined with the patient brokering and kickback offenses violating Florida law that Defendants engaged in before October 2018. Kickbacks were crucial to the daily functioning of these alleged schemes, and permeated them at every level. Without these patient recruiters procuring patients through illegal kickbacks, these facilities would not have admitted as many patients, and J. MARKOVICH and D. MARKOVICH, and others, would have made less money. Making a profit, legally or not, was the goal, and a system of illegal kickbacks were a means to this end.

A steady supply of patients does not materialize overnight. Necessary to the story of how the kickbacks and fraud alleged in the Indictment came to be are the facts that Defendants relied upon patient recruiters and a system of kickbacks before EKRA was passed to bring in patients and maximize their profits by obtaining patients through kickbacks, keeping them at their facilities by plying them with drugs, and billing them for medically unnecessary services, including urinalysis, and also for therapy sessions that were also often never provided. At the time, such conduct was only prohibited by Florida law. The Government will show Defendants knew this, and even submitted that they would not violate applicable laws including Florida's patient brokering statutes when they were licensed as a substance abuse treatment facility in Florida.[6]

---

[extrinsic] evidence unless it tends to only prove criminal propensity. The list provided by the rule is not exhaustive and the range of relevancy outside the ban is almost infinite." Stephens, 365 F.3d at 975 (quoting United States v. Cohen, 888 F.2d 770, 776 (11th Cir. 1989) (internal quotations omitted)).

[6] Florida Department of Children and Families (DCF), for example, and other state authorities, regulated and licensed substance abuse treatment facilities in Florida.

The Government further notes that, because many of the alleged kickbacks take the form of flight purchases that can be clearly traced to the Defendants, the likely defense to the kickback charges will be that the Defendants lacked intent, either because they were not aware that this practice was wrong, they expected the patients to repay them, or for some other reason. The pre-EKRA kickbacks, as well as the Defendants' knowledge of the Florida prohibition on such payments, is thus squarely relevant to establishing the Defendants' intent.

Finally, Defendant J. MARKOVICH's knowledge about, and violation of, Florida's law prohibiting patient brokering and kickbacks is directly relevant to the money laundering charges and Paycheck Protection Program ("PPP")/bank fraud charges against him. For money laundering, the Government must prove J. MARKOVICH knew that the funds in the charged transactions were the proceeds of "some form of unlawful activity." Under the statute, this unlawful activity requirement can be satisfied by knowledge that the proceeds were a violation of state law, and not simply the specified unlawful activity in the Indictment. See 18 U.S.C. § 1956(c)(1).[7] Thus, the Government's proposed evidence satisfies an element of the crime. Likewise, the bank fraud counts turn on J. MARKOVICH's knowledge that Compass Detox and WAR, the applicants for the PPP loans, were engaged in violations of law, as well as his knowledge that the statements he made in the PPP applications were false.

---

[7] As this definitional Section of the money laundering statute makes clear: "The term 'knowing that the property involved in the transaction represents the proceeds of some form of unlawful activity' means that the person knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity that constitutes a felony under State, Federal, or foreign law, regardless of whether or not such activity is specified in paragraph (7) [which further defines the term specified unlawful activity]." The case law on this question states the same: United States v. Awan, 966 F.2d 1415, 1424 (11th Cir. 1992) ("Section 1956(c)(1) . . . defined 'proceeds of some form of unlawful activity' as proceeds from the commission of acts constituting any state or federal felony.").

## CONCLUSION

The Government respectfully submits that because evidence of the Defendants' knowledge about and violation of Florida's prohibition against kickbacks and patient brokering is direct evidence of, or at least is inextricably intertwined with, and provides necessary background and context for explaining, the health care and wire fraud and kickback conspiracies and substantive counts with which Defendants are charged, and proves an element of the money laudering allegations J. MARKOVICH faces, the Court should permit the United States to introduce such evidence at trial. In the alternative, because this evidence is relevant to issues other than Defendants' character, can be sufficiently proven, is not being offered for any impermissible reasons, and is not substantially more prejudicial than probative, it is also admissible under Federal Rule of Evidence 404(b).[8]

---

[8] The Government respectfully reserves the right to supplement this notice with any additional information or potential 404(b) evidence that it intends to introduce at trial.

Dated: June 25, 2021                                 Respectfully submitted,

                                                                      JUAN ANTONIO GONZALEZ
                                                                      ACTING UNITED STATES ATTORNEY
                                                                      SOUTHERN DISTRICT OF FLORIDA

                                                                      JOSEPH S. BEEMSTERBOER
                                                                      ACTING CHIEF, FRAUD SECTION
                                                                      CRIMINAL DIVISION
                                                                      DEPARTMENT OF JUSTICE

By:    */s/ James V. Hayes*
         JAMES V. HAYES (FL Bar # A5501717)
         Senior Litigation Counsel
         JAMIE DE BOER (FL Bar #A5502601)
         Trial Attorney
         United States Department of Justice
         Criminal Division, Fraud Section
         1400 New York Avenue, N.W.
         Washington, D.C. 20005
         Telephone: (202) 774-4276
         James.Hayes@usdoj.gov
         Jamie.DeBoer@usdoj.gov

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that on June 25, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

                                                                              *James V. Hayes*