UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-CR-60020-DIMITROULEAS/SNOW

UNITED STATES OF AMERICA

v.

JONATHAN MARKOVICH, and
DANIEL MARKOVICH,

Defendants.
_____/

GOVERNMENT'S SUPPLEMENTAL NOTICE OF INTENT TO INTRODUCE
INEXTRICABLY INTERTWINED EVIDENCE
OR EVIDENCE PURSUANT TO FED. R. EVID. 404(b)

Pursuant to Federal Rule of Evidence 404(b)(2)(3), the Scheduling Order [D.E. 183], and

Local Rule 88.10(h), the United States of America hereby informs Defendants of its intent to

introduce evidence at trial regarding Defendants' efforts to help co-Defendant Christopher Garnto

obtain a mortgage on a house, which he bought from co-Defendant Richard Waserstein.  As

described below, the transactions at issue are part of the manner and means of the health care fraud,

wire fraud, and kickback conspiracies alleged in the Indictment.  However, out of an abundance

of caution, and because the Government believes some of the Markovich Defendants' acts may

constitute the additional crime of wire fraud, the Government provides this supplemental notice.

On June 29, 2021, the Government first became aware of allegations that Jonathan

Markovich, Daniel Markovich, and Christopher Garnto submitted falsified bank records for

Mended Bridge Investments to a mortgage broker in order to assist Garnto in qualifying for and

securing a mortgage so that Garnto could purchase a home from Waserstein.  Since the

Government became aware of these allegations, the Government has conducted additional

investigative steps, including reviewing emails from Compass Detox, interviewing a witness, and

1

issuing additional grand jury subpoenas. These further investigative steps have substantiated these allegations.[1]

The Government alleges that Compass Detox and WAR obtained many of their patients through illegal kickbacks and that Garnto was the lead patient broker, working under the direction of Jonathan Markovich, Daniel Markovich, and Waserstein. The Government alleges that Waserstein, and the Markoviches incentivized Garnto to continue recruiting patients through money, gifts, and favors, many of which were themselves kickbacks. This patient recruiting conduct is alleged as part of the manner and means of Count 1 (conspiracy to commit health care and wire fraud) and Count 10 (conspiracy to violate the Eliminating Kickbacks in Recovery Act).[2] These Counts also allege that the Defendants diverted fraud proceeds and kickbacks for their own personal use, the use and benefit of others, and to further the fraud.[3]

Over the last several days, the Government has developed evidence of a specific kickback arrangement—the sale of a house from Waserstein to Garnto—that implicates the Markoviches in additional potential crimes, including potential aiding and abetting of wire fraud when bank

---

[1]     On June 30, 2021 and July 1, 2021, the Government began receiving documents responsive to these additional subpoenas and is in the process of preparing these records, along with other recently-obtained records relevant to the case, for production to the defense as soon as practicable. The Government is continuing to investigate this issue, and will notice such information, if necessary as soon as the Government is able to complete its investigation. The Government further provides documents it has already produced that pertain to this issue below in fn.5.

[2]     Specifically, the Manner and Means section of Count 1 alleges that both Markoviches and Garnto offered kickbacks and bribes to prospective patients, and that Garnto and his co-conspirators (to include the Markoviches) paid patient recruiters kickbacks and bribes in exchange for referring patients. (Indictment, Count 1, Manner and Means ¶¶ 5-6.) Count 10 contains similar allegations.

[3]     To the extent that the transaction described herein is ruled by the Court to not be part of the fraud or kickback conspiracies, then the Government respectfully submits that it is an example of Jonathan Markovich's and Richard Waserstein's conspiracy to commit money laundering, charged in Count 24, and admissible as direct evidence as to that charge.

statements falsified by the Markoviches were emailed by Garnto (with the Markoviches' knowledge) to a mortgage broker in the hopes that the broker would use those statements to assist Garnto in obtaining a mortgage.[4]  In addition, when they did not obtain a loan through the original loan broker, the Markoviches paid Garnto the money he needed to fund the down payment on a loan brokered by a different mortgage broker.  Garnto would simply not have been able to afford this house, or this loan, without the money he received for this purpose from these Defendants.  Once he was locked into a loan that was funded with fraud proceeds, Garnto was stuck continuing to work for the Markoviches, including continuing to participate in the conspiracy under their direction.  If Garnto did not continue working for the Markoviches, he would not have been able to meet his mortgage payments (unless he found new employment that sufficiently compensated him).  He would also be implicated in the fraud associated with this mortgage and property.  Thus, this transaction was in furtherance of the conspiracy.

The Government views this conduct and this transaction as part and parcel of the underlying charged health care fraud and kickback conspiracies, and therefore direct evidence of the crimes charged and not 404(b) evidence. But the Government nonetheless notices this conduct to ensure that the Defendants have sufficient time prepare to respond to this information at trial and litigate any issues with the Court if they wish to do so.

Specifically, the Government will seek to introduce the evidence that Jonathan Markovich, Daniel Markovich, and Richard Waserstein sought to sell Christopher Garnto a house owned by

---

[4]     The Defendants have always known that the Government views the sale of the house as part of the broader conspiracy and that it would be part of the evidence presented in this case. Indeed, this was discussed at length in the preliminary hearing during which Judge Valle found probable cause to hold the defendants over on the criminal complaint.  The evidence discussed herein provides further details surrounding that transaction, including evidence that the Markovichs engaged in additional crimes in order to attempt to effectuate the transaction.

Richard Waserstein on Garland Avenue in Surfside, Florida as a kickback and reward in exchange for Garnto's patient recruiting efforts, and as a way to ensure that Garnto remained under their control and direction by locking Garnto into a mortgage which, without these Defendants' intervention, Garnto could not have afforded.  Garnto moved into the house in May 2019 and, around the same time, Waserstein negotiated a proposed loan arrangement with a mortgage broker on Garnto's behalf.  Under the proposed arrangement, Garnto would put $120,000 down toward the proposed $600,000 purchase price and receive a mortgage for $480,000.  The Government's review of Garnto's financial records indicates Garnto did not have the money to finance a down payment for the house and could not have afforded a mortgage on this home without financial assistance.  In an effort to help make Garnto appear qualified for this potential loan, Jonathan and Daniel Markovich participated, with Garnto, in the falsification of Garnto's bank statements for Garnto's company Mended Bridge Investments.  This is evident in emails reviewed by the Government where Jonathan and Daniel Markovich each sent Christopher Garnto copies of Mended Bridge Investment's bank statements where the total balances have been revised to reflect substantially higher amounts than those accounts in reality possessed.  The discrepancy is plain when the versions of the documents circulated by the Markovichs are reviewed against underlying bank records obtained directly from Garnto's bank.

After the mortgage broker pushed back for better financial back-up for the proposed loan, Garnto, Waserstein, and the Markovich's turned to a new mortgage broker.  This time, they did not falsify statements.  Instead, they distributed $90,000 from WAR—a company for which Garnto was not employed according to payroll records—to Garnto.  They then provided bank statements for the two following months (which did not show the actual $90,000 influx from WAR because the transaction had occurred the month prior) to the new mortgage broker.  The loan was ultimately

4

approved, funded and, on the closing date, WAR paid Garnto an additional $30,000, thereby covering nearly the full down payment and closing costs. Garnto wired approximately $123,000 to a company associated with Richard Waserstein, which served as the escrow agent on the transaction. Thus, Waserstein ultimately received back the $120,000 that WAR had paid to Garnto to fund the transaction, and Garnto received the benefit of being able to afford a home he otherwise could not have bought. In addition, Garnto was locked into an expensive mortgage that he could not afford in the absence of continued financial assistance from Waserstein and the Markovich's. This transaction is one specific example of how the Defendants kept their conspiracy going, and ensured that they had patient recruiters like Garnto who could continue to recruit patients to Compass Detox and WAR.[5]

---

[5]     As an even more specific disclosure of facts pertaining to this transaction, the Government has identified the following documents previously provided to the defense:  COMPASS-0000484894; COMPASS-0000484895; COMPASS-0000437563; COMPASS-0000674090; COMPASS-0001152001; COMPASS-0000674141; COMPASS-0001166927; COMPASS-0000806409; COMPASS-0000806410; COMPASS-0000806416; COMPASS-0000477014; COMPASS-0000473157; COMPASS-0000473160; COMPASS-0000473166; COMPASS-0000449418; COMPASS-0000487337; COMPASS-0000490358; COMPASS-0000620131; COMPASS-0000630984; 0000630986.

**CONCLUSION**

The Government respectfully submits that because evidence of the Defendants' involvement in securing a mortgage for co-defendant Garnto is direct evidence of, or at least is inextricably intertwined with, the issue of how the Defendants' perpetuated their health care, wire fraud, and kickback conspiracies, the Court should permit the United States to introduce such evidence at trial.   In the alternative, because this evidence is relevant to issues other than Defendants' character, can be sufficiently proven, is not being offered for any impermissible reasons, and is not substantially more prejudicial than probative, it is also admissible under Federal Rule of Evidence 404(b).[6]

Dated: July 2, 2021

Respectfully submitted,

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

JOSEPH R. BEEMSTERBOER
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
DEPARTMENT OF JUSTICE

By:     _/s/ James V. Hayes_
JAMES V. HAYES (FL Bar # A5501717)
Senior Litigation Counsel
JAMIE DE BOER (FL Bar #A5502601)
Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 774-4276
James.Hayes@usdoj.gov
Jamie.DeBoer@usdoj.gov

---

[6]     The Government respectfully reserves the right to supplement this notice with any additional information or potential 404(b) evidence that it intends to introduce at trial.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 2, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*James V. Hayes*