IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CR-60020-DIMITROULEAS/SNOW

UNITED STATES OF AMERICA

v.

DANIEL MARKOVICH,

    Defendant.
                                   /

## MOTION TO EXCLUDE THE PROPOSED
## EXPERT TESTIMONY OF DR. KELLY CLARK

Daniel Markovich respectfully moves the Court to exclude the testimony of the Government's proposed expert witness, Dr. Kelly Clark, pursuant to Rule 702 of the Federal Rules of Evidence and the Supreme Court precedent established in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Additionally, Mr. Markovich respectfully requests that the Court conduct an evidentiary hearing on the entirety of this motion.

The Government's June 11, 2021 Disclosure of Expert Witness and Evidence [D.E. ___] proffers that Dr. Clark will opine on a range of topics regarding addiction, alcohol and drug treatment, detox, and rehabilitation. For example, the Government proposes that Dr. Clark opine on the following:

- How "Compass Detox and WAR were designed to generate revenue by admitting substance abuse patients often under age of 26."

- "Compass Detox and WAR used UA testing as a profit Center."[1]

- "Trends in billing data" and "indicia of services billed …that were not medically necessary…," even though it is unclear what billing data Dr. Clark reviewed to draw such conclusions

- Alleged unnecessary medical treatment and illegitimate treatment at Compass Detox and WAR.[2]

- How substance abuse is "supposed to work" and the "proper substance abuse treatment"

Anticipated as part of her testimony, per the Government's summary, Dr. Clark will make overarching statements about all the medical care, treatment, and patients seen at Compass Detox and WAR. Not only is such testimony overly broad and beyond the scope of Dr. Clark's experience, it appears that she makes such wide-ranging statements after having reviewed medical charts for only ten patients. To be clear, to date, the Government has produced thousands of patient files, and a review of ZenCharts, the portal used by Compass and WAR to track patient charts, shows that thousands of patients – not ten, twenty, or a handful – stayed at the facilities. But Dr. Clark's summaries and reports only draw upon the medical files

---

[1] The relevance of such testimony is unclear, as it is undisputed that neither Compass Detox nor WAR billed for UA testing.

[2] The Government is proposing that Dr. Clark not only testify about what she perceives to be the proper operations of drug and alcohol detoxification and rehabilitation facilities, but to draw a legal conclusion as to whether Compass and WAR – as a whole – operated properly.

of ten patients. The Government has not shown what specific review Dr. Clark conducted to draw such overarching conclusions, nor have they provided the underlying data upon which she relied to reach her long list of conclusions they render in their summary of her testimony.

Moreover, Dr. Clark also has opinions about topics, such as billing and urine analysis, that are clearly outside her academic and professional training..

In essence, the Government is attempting to proffer an alleged "expert" to parrot and affirm the reliability of the allegations in the Indictment;to repeat medical thresholds and regulations for the jury; to opine and provide legally conclusive testimony as to the ultimate issue in a criminal case; and to insert a closing argument in the Government's case in chief, which should be reserved for the lawyers at the end of the case. As discussed further below, this is the exact safeguard Rule 702 and *Daubert* is designed to protect against.

Last, while Dr. Clark may have medical training and professional experiences in the addiction workspace, the broad opinions for which she is brought forth to testify upon have no place in this case. Dr. Clark's testimony, if permitted, runs the risk of confusing the jury about medical standards versus legal standards. The jury is not being asked to determine whether Compass or WAR was negligent or provided subpar medical treatment according to Dr. Clark's standards. Rather, they have to decide whether the Markoviches' actions were criminal based on Compass' and WAR's operations. The jury will be able to make such a determination by accessing

the factual evidence in this case – including witness testimony (from employees and patients who have first-hand knowledge of the facilities), and documents and summary charts (such as medical files and insurance records). After all, the Government's exhibit list in this case is approximately 30 pages and includes ___ number of proposed exhibits. There is no need for an alleged expert to offer testimony in this case, when such testimony is likely to confuse the issues before them.

## Argument

I. **The Applicable Standard of Rule 702 and *Daubert***

Federal Rule of Evidence 702 controls the admission of expert testimony. In the seminal case *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court established that Rule 702 requires the district court to act as a "gatekeeper" when reviewing the admissibility of expert evidence. 509 U.S. 597, 289 n. 7 (1993). "This function inherently require[s] the trial court to conduct an exacting analysis of the foundations of expert opinions to ensure they meet the standards for admissibility under Rule 702." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). "[T]he objective of [the gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony." *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 152 (1999).

The Eleventh Circuit requires a rigorous three-part inquiry to determine the admissibility of expert testimony under Rule 702. Under it, the trial court must evaluate whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 561 (11th Cir. 1998). The party offering the expert shoulders the burden of establishing the qualification, reliability, and helpfulness of the testimony by a preponderance of the evidence. *Rick v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005).

> a. *Dr. Clark is Unqualified to Testify about the Specific Subject Matters Detailed in the Disclosure.*

The qualification prong requires the Court to examine the experience, training, and credentials of the expert "in light of the subject matter of the proposed testimony." *Jack v. Glaxo Wellcome, Inc.*, 239 F. Supp 2d 1308, 1314 (N.D. Ga. 2002). An expert may be "well-trained, highly educated, and experienced," and possess an "extremely impressive professional track record" in a field or specialty, but nonetheless this "does not obviate the need for a more thorough analysis of whether [the expert] is qualified and competent to testify as an expert as to the subject matter of his proposed testimony". *Id.* at 1314-16. "[A]n expert may not

5

qualify through reading and preparation as an expert in 'an entirely different field or discipline,' and a court may exclude an expert's testimony if it determines the expert is 'testifying to an area outside of-but related to-his expertise.'" *Kipperman v. Onex Corp.*, 411 B.R. 805, 843 (N.D. Ga. 2009).

According to the Government's disclosure and Dr. Clark's curriculum vitae, Dr. Clark is a physician, and trained, educated, and experienced in the field of addiction medicine and psychiatry. Yet, the Government lists opinions that would require expertise in fields other than addiction medicine and psychiatry, while providing no additional support for those opinions. [D.E. 202]. Specifically, the Government states that Dr. Clark will testify about the billing at Compass Detox and WAR. However, Dr. Clark is certainly not a utilization review or billing expert, and has never worked at an insurance or insurance billing company. The Government also proffers that Dr. Clark will testify about urine analysis, including the different types of urine analysis available and what is appropriate. However, Dr. Clark does not have any laboratory experience to qualify her as an expert regarding urine analysis testing. Dr. Clark's experience in addiction medicine does not make her an expert on what happens or should happen in a laboratory. Simply being a physician specializing in addiction does not make one a specialist or expert on all aspects of running a drug and alcohol detoxification and rehabilitation facility. Moreover, Dr. Clark's opinions are inconsistent with what is required by Florida statutes and regulations and by most insurance companies.

More concerning is Dr. Clark's legally conclusive opinions about what individuals "knowingly" did – such as "knowingly" submitting false bills, "knowingly" billing for services not provided, "knowingly" ordering medically unnecessary services, and documenting "false" information. Dr. Clark is not a fact witness – she was never at Compass or at WAR, and certainly does not know why individuals in a certain manner. Such opinions by Dr. Clark are pure speculation and completely improper. Moreover, Dr. Clark is a medical doctor – not a lawyer. She is wholly unqualified to offer expert opinions regarding legal standards – even if such opinions were permissible in a criminal trial.

For instance, Dr. Clark opines that Compass Detox and WAR "used unjustified or medically unnecessary procedures as a means of revenue generation, and not for addiction treatment focused on patient care." This is not an expert opinion. This is a legal conclusion. While she may believe certain actions violate medical standards of care or treatment, those standards are not at issue in this case. This is not a medical malpractice case – it is a criminal healthcare fraud trial. Her testimony in this regard is not only irrelevant to the issues the jury must decide, but also run the risk of confusing the jury by interweaving medical standards with legal standards. In no manner should Dr. Clark testify to ultimate issues in the case that the jury decides.

Even if such opinions were somehow appropriate, Dr. Clark lacks any relevant experience to assert such testimony as expert testimony. They have no scientific

bearing or basis. Rather, such opinions are personal opinions based on what Dr. Clark seems to deem "right and wrong." Such judgment calls have no credibility or reliability as an expert opinion. *See In re Baycol Prod. Litig.*, 532 F. Supp. 2d 1029, 1053 (D. Minn. 2007) ("Personal views on corporate ethics and morality are not expert opinions.")

As such, the Government has failed to satisfy its burden under Rule 702 of proving by a preponderance of the evidence that Dr. Clark is qualified to testify about the topics noted. Her testimony in this regard should be excluded, or in the alternative, significantly limited.

    *b. Dr. Clark's Methodology is Not Sufficiently Reliable under <u>Daubert</u>*

The Government has provided two expert reports for Dr. Clark. Dr. Clark reviewed two (2) patient records in her initial report and an additional eight (8) patients in the June 11, 2021 report. Dr. Clark claims that patients were chosen at random but provides no information as to the methodology used to randomly select patient files. *See Johnson v. DeSoto County Board of Commissioners*, 204 F. 3d 1335, 1342 (11th Cir. 2000) (noting that, in voting rights cases, that statistical evidence derived from a sampling method using reliable statistical techniques may be admissible.)

Nor does Dr. Clark explain how a total of ten (10) patient files reviewed is sound or statistically accurate in accessing patient treatment at Compass and WAR. Compass Detox and WAR treated 984 patients during the time period at issue. There

are distinctly 2,285 patient charts in Compass Detox's and WAR's electronic medical record system (that is, ZenCharts). Ten (10) patients in a pool of 984 is .**001% of the entire patient population** at Compass Detox and WAR. Worse yet, Dr. Clark extrapolates from that very select and limited pool of patients and claims that her small "random" selection of patients is representative of the entire patient population at Compass Detox and WAR. It is unclear from the disclosure why or how the ten patients were selected. Moreover, there is no evidence that the ten patients were a statistically significant sample that are representative of the entire patient population. As such, should Dr. Clark's testimony be permitted, it should be limited to the ten patient files she reviewed and not extrapolated to the rest of the patient population at Compass Detox and WAR. *See United States v. Stokes*, No. 14-CR-290, 2018 WL 6729999 (N.D. Ga. October 19, 2018) (excluding extrapolation from "randomly selected" patient files testimony by government because bases for methodology was unclear). Dr. Clark cannot be permitted to draw broad generalizations about all of the patients at Compass merely from reviewing ten files.

Additionally, as explained earlier, much of Dr. Clark's opinions are rampant with overgeneralizations. For instance, Dr. Clark claims that "Compass Detox and WAR billed for Detox, Residential Rehab, PHP, and IOP levels of care which were not medically indicated." She makes a similar statement regarding the urine analysis and blood work. However, Dr. Clark's report fails to provide the appropriate

9

standard or how the standard is scientifically proven. The use of such overgeneralizations makes it impossible for Mr. Markovich to test or challenge the opinion through rebuttal testimony. Dr. Clark also makes vague statements such as that Compass and WAR bill insurance for patient's therapy experiences as part of their programming, which could not be considered therapeutic. Again, Dr. Clark fails to identify the so-called therapy experiences and fails to provide the appropriate standard. Similarly, Dr. Clark states that Compass Detox and WAR "required patients to attend group." It is wholly unclear how this defies any set of standards, when a few sentences later she takes issue with the lack of groups at the facilities. Again, these seem to be personal opinions by Dr. Clark that have no scientific basis and are therefore unreliable for purposes of expert testimony. Such vague and non-technical statements cannot be tested or refuted and should be excluded.

    c. *Dr. Clark's Expert Testimony Will Not Assist the Trier of Fact in Determining a Fact at Issue*

Much of Dr. Clark's proffered testimony would not assist the trier of fact for a number of reasons. First, the conclusions asserted in the Government's disclosure are vague assertions that lack any identifiable standard and are no different from assertions that the Government's lawyers can make during closing argument. Such proposed expert testimony simply cannot aid the jury in determining a fact at issue. *Frazier*, 387 F.3d at 1262-63. ("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can

argue in closing arguments.")  For instance, Dr. Clark's opinion that the focus at Compass Detox and WAR was on revenue generation and not appropriate treatment is exactly the type of statement that is reserved for the jury during closing arguments. In addition to being unreliable, such testimony is wholly unhelpful to a jury because it is not expert testimony – it is an opinion that the jury could reach on its own or one that a lawyer could present in closing argument.

Additionally, the Government proffers that Dr. Clark will testify to the "background section" of the Indictment.  The background section of the Indictment contains recitations of various Federal regulations, Florida statutes, regulations from Department of Children and Families.  This is wholly inappropriate and does not assist the jury to have an expert read regulations.  Not only is the average lay person capable of reading the regulations, but the judge is the one responsible for interpreting the law and instructing the jury on the law. *See Bammerlin v. Navistar*, 30 F.3d 898, 900 (7th Cir. 1994) ("The meaning of federal regulations is not a question of fact, to be resolved by the jury after a battle of experts.  It is a question of law, to be resolved by the court."); *Chen v. Mayflower Transit, Inc.*, 224 F.R.D. 415, 420 (N.D. Ill. 2004) ("In a jury trial the judge has a particular responsibility to avoid "allow[ing] the jury to infer that it could look to [a] witness for legal guidance.") (*citing Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 366 (7th Cir. 1990)); *Negium v. BNSF Railway Co.*, No. 1:06-cv-026, 2008 WL 11378833, at *3 (D.N.D. Apr. 10, 2008) ("It is well established that matters of law

are for the trial judge who has the responsibility to instruct the jury on the applicable law.") (*citing Southern Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003)); *Amica Mut. Ins. Co. v. Morowitz*, No. 08-10085-CIV, 2009 WL 3179703, at *2 (S.D. Fla. Oct. 1, 2009) (concluding that proffered evidence was not the type which can be established through expert testimony because the court could understand a breach of contract claim.)

> d. *The Court Should Conduct a Daubert Hearing Regarding Dr. Clark's Testimony Prior to Trial.*

If the Court does not exclude Dr. Clark's testimony at the outset, Mr. Markovich respectfully requests that the Court hold an evidentiary hearing on this motion to ensure that its gatekeeping function is enforced. While Mr. Markovich believes Dr. Clark does not satisfy the relevant expert requirements, an evidentiary hearing will make it abundantly clear to the Court and the defendants exactly what Dr. Clark's opinions are, what bases and reasoning she used to reach those opinions, and if the opinions are reliable under *Daubert*.

## Conclusion

Mr. Markovich respectfully requests that the Court exclude, or significantly limit, Dr. Clark's testimony from trial based on the above, or conduct an evidentiary hearing on this motion to make such determinations.

Respectfully submitted,

TACHE, BRONIS, AND DESCALZO, P.A.
150 S.E. 2 Avenue, Suite 600

Miami, Florida 33131
Telephone: (305) 537-9565
Facsimile: (305) 537-9567

By: */s/ Marissel Descalzo*
       **Marissel Descalzo, Esq.**
       Florida Bar. No. 669318
       mdescalzo@tachebronis.com
       service@tachebronis.com
       *Counsel for Daniel Markovich*

## CERTIFICATE OF SERVICE

I CERTIFY THAT, on this 9th day of July, 2021, the foregoing was electronically transmitted via CM/ECF:

By: */s/ Marissel Descalzo*
**Marissel Descalzo, Esq.**