IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CR-60020-DIMITROULEAS/SNOW

UNITED STATES OF AMERICA

v.

DANIEL MARKOVICH,

     Defendant.

                              /

## MOTION TO COMPEL DISCLOSURE AND IDENTIFICATION OF *BRADY* AND *GIGLIO* MATERIAL

Defendant, Daniel Markovich, respectfully requests that this Court order the government to disclose and identify all *Brady* and *Giglio* material in advance of trial to protect Mr. Markovich's constitutional rights to due process and a fair trial, under the Fifth and Sixth Amendments to the United States Constitution.

### Introduction

The government has been investigating Jonathan and Daniel Markovich (collectively, the "Markoviches") since, at least, October 2018. The allegations in the Indictment span a four-year period and arise from two different entities – Compass Detox and We Are Recovery ("WAR"). The case involves approximately 984 distinct patients and approximately 2,285 patient files.

125798167.2

By the government's own admission, the "discovery in this case is voluminous." *See* government's Status Report and Motion to Continue Trial [D.E. 195] at 2. To date, the government has produced over 399,434 documents; 1,553,265 emails, four online portals containing thousands of patient files; multiple excel files with thousands of lines of insurance billing data; and an expert disclosure that included two reports and four transcripts. The discovery continues to arrive, including but not limited to, the data extracted from two cell phones seized from defendants should be produced soon. *See* [D.E. 195] at 5. In fact, the government's Eighth Discovery production was made on the eve of Friday, July 9, 2021, and the thumb drives containing said discovery have yet to arrive at defense counsels' offices.

While the government has been diligent in producing discovery and even providing indexes that provide broad strokes as to what is contained within each production, the government has failed to identify *Brady* and *Giglio* within the voluminous discovery. It is undisputed that the government has knowledge of the existence of *Brady*. In fact, the government noted for the Court that the emails produced likely contain "exculpatory" records but failed to identify the exculpatory emails. [D.E. 195] at 8.

As a result, on June 14, 2021, undersigned counsel made the first *Brady* demand. The government responded on June 18, 2021, stating that it "is aware of

its continuing duty to disclose such newly discovered additional information required by the Standing Discovery Order, the Scheduling Order in this case, Rule 16(c) of the Federal Rules of Criminal Procedure, *Brady*, *Agurs*, *Giglio*, *Napue*, and its obligation to assure a fair trial."

Undersigned counsel renewed its *Brady* demand following receipt of the government's expert disclosure.  Notably absent from the disclosure was any information regarding payments made to the expert in this case in exchange for her testimony.  Moreover, a Google search of the government's purported expert revealed that she was the Chief Medical Officer at a company that entered a civil settlement with the Department of Judgment for allegations of improper billing and providing medically unnecessary services.  In response to the *Brady* demand, the government identified where in the discovery counsel could locate information regarding the civil settlement.  The government further noted that the information was produced, but not "highlighted."

It appears that the government expects counsel to dig through the "voluminous" discovery in hopes of locating the *Brady* and *Giglio* material in advance of the quickly approaching trial in this case.  The government's approach is inconsistent with the letter and spirit of *Brady* and *Giglio*.  The government has had the benefit of investigating this case for over four years and has been in possession of a lot of the discovery for that four-year period.  If the government knows where

in the massive discovery *Brady* and/or *Giglio* materials are located, it should identify

the location for the defense to ensure that the Mr. Markovich receives a fair trial.

Moreover, the government should be ordered to identify, sufficiently in advance of

trial, all exculpatory and impeachment material in its possession, including

documents previously produced by bates number to protect Mr. Markovich's rights

under *Brady* and *Giglio*[1].

## ARGUMENT

In criminal prosecutions, the government must produce "evidence favorable

to an accused … where the evidence is material either to guilt or to punishment[.]"

*Brady v. Maryland*, 373 U.S. 83, 87 (1963).  This obligation includes evidence that

casts a shadow of doubt on a government witness's credibility.  *Giglio v. United*

*States*, 405 U.S. 150, 154-55 (1972).  The purpose of disclosing *Brady* materials is

to ensure that defendants receive fair trials.  *Brady*, 373 U.S. at 87.  Disclosure

should generally occur before trial.  *United States v. Nagra*, 147 F.3d 875, 881 (9th

Cir. 1998).  A violation of defendant's constitutional right to a fair trial occurs when

the government fails to disclose exculpatory or impeachment evidence which is

material to the issue of guilty or punishment.

---

[1] On July 2, 2021, the government sent correspondence to defense counsel identifying approximately 20 exculpatory documents.  These are the type of disclosures defense counsel requests here.

In cases where discovery amounts to millions of pages, courts have protected the letter and spirit of *Brady* and *Giglio* by requiring the government to identify exculpatory and impeaching material. *See e.g., United States v. Salyer*, 271 F.R.D. 148, 155 (E.D. Cal. 2010) (evaluating production containing millions of pages and holding that "for documents already disclosed, the government shall specifically identify by Bate [sic] Stamp number or by specific title and location, the information which a reasonable prosecutor would view as exculpatory or impeaching[.]"); *United States v. Saffarinia*, 424 F. Supp. 3d 46, 90-91 (D.D.C. 2020) (ordering that the government must "specifically identify any known Brady material contained in its previously disclosed production of approximately 3.5 million pages of documents"). *United States v. Blankenship*, No. 5:14-cr-00244, 2015 WL 3687864, at *6 (S.D. W. Va. June 12, 2015) ("The Court finds that the United States should specifically designate any known *Brady* material as such and disclose the same to defense counsel.  In other words, without more, the United States does not comply with the requirement of *Brady* by merely including all known *Brady* material within the four million plus pages of discovery."); *United States v. Hsia,* 24 F. Supp. 2d 14, 29-30 (D.D.C. 1998) ("The government cannot meet its *Brady* obligations by providing [the defendant] with access to 600,000 documents and then claiming that she should have been able to find the exculpatory information in the haystack.  To the extent that the government knows of any documents or statements that constitute

*Brady* material, it must identify that material to [the defendant].”); *United States v. Cutting*, No. 14-cr-00139-SI-1, 2017 WL 132403, at \*10 (N.D. Cal. Jan. 12, 2017) (holding that where the government produced millions of pages it was “appropriate to order the government to identify by Bates number the *Brady/Giglio* material in the discovery that has been produced”); *United States v. McVeigh*, 954 F. Supp. 1441, 1443 (D. Colo. 1997) (“I don’t consider that the government has met … its obligations under those authorities with respect to due process by simply saying, ‘This is open discovery; go fish and find what you want, and if there’s anything there that’s exculpatory, you’re welcome to it.’ … I think there’s an affirmative duty on the part of government counsel[.]”); *United States v. Thomas*, 981 F. Supp. 2d 229, 239 (S.D.N.Y. 2013) (“[T]he  government cannot hide Brady material as an exculpatory needle in a haystack of discovery materials”); *Emmet v. Ricketts*, 397 F. Supp. 1025, 1042 (N.D. Ga. 1975) (finding that, in addition to other gross *Brady* violations, the prosecutor violated *Brady* by improperly providing the court with large quantities of documents for an *in camera* review without identifying the potential *Brady* material).   These opinions reflect the principle that, “at some point…a duty to disclose may be unfulfilled by disclosing too much; at some point, ‘disclosure,’ in order to be meaningful, requires ‘identification’ as well.” *Salyer*, 271 F.R.D. at 155.

The *Salyer* opinions – the original order and the order on the government's motion for reconsideration- are instructive. In *Salyer*, like the instant case, the government had investigated the case for years, the government collected and produced a massive amount of discovery, and the government believed it satisfied its *Brady/Giglio* obligations by producing everything to the defense via open file discovery.

In *Salyer*, the court rejected the government's argument that it would be a burden to identify *Brady/Giglio* information in the voluminous production. *Salyer*, 2010 WL 3036444, at *3-5. The court further noted that "[d]uring the course of the years long investigation …, the government personnel seemed to be able to segregate that evidence which would be useful in the prosecution in terms of guilt, but apparently had made no efforts to segregate that evidence which runs counter to the charges." *Id*. at *4. The court explained that "[i]f the government professes the inability to identify the required information after five years of pre-indictment investigation, its argument that the defense can 'easily' identify the materials buried within the mass of documents within months of post-indictment activity is meritless." *Id*. at *5.

Moreover, the court in *Salyer* refuted the government's argument that it should have to "crawl in to the mind of defense counsel" to prepare the defense case, and held that, "the prosecution has the duty to affirmatively scour those records of

7

the agencies considered the 'government' for purposes of the criminal case in order to determine and acquire those materials which would be considered *Brady* exculpatory and Giglio impeaching." *Id*. at \*4-5 (*citing Kyles v. Whitley*, 514 U.S. 419, 437 (1995)) ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."); *see* Memorandum for Department Prosecutors, Department of Justice Guidance for Prosecutors Regarding Criminal Discovery. Dated January 4, 2010, Section B ("To ensure that all discovery is disclosed on a timely basis, generally all potentially discoverable materials within the custody and control of the prosecution team should be reviewed"), *Id*. at item 3 ("[g]enerally, all evidence and information gathered during the investigation should be reviewed, including anything obtained during searches or via subpoenas, etc." )

The reasoning from the *Salyer* opinions apply here. The government has produced a massive amount of discovery. This too is a case where the "pearl of exculpatory or impeaching information [will be] inevitably lost in the sea of the mundane." *Salyer*, 271 F.R.D. at 155. Again, the issue the defense raises is whether the government's disclosure is in the letter and spirit of *Brady/Giglio* by turning over everything that it has acquired in its four plus year investigation. Here, such an approach does not adequately protect Mr. Markovich's constitutional rights to due process and a fair trial. As such, this Court should order the fovernment to identify,

out of the ocean of documents produced to date, the exculpatory and impeaching materials.

**WHEREFORE**, the Defendant, Daniel Markovich, moves this Honorable Court to grant his Motion to Compel Disclosure and Identification of *Brady* and *Giglio*.

## **Rule 88.9 Certification**

Counsel for Mr. Markovich hereby certifies that she has conferred with counsel for the government in a good faith effort to resolve the issues raised in the motion. Counsel for the government opposes this motion,

Dated: July 13, 2021

Respectfully submitted,

TACHE, BRONIS, AND DESCALZO, P.A.
150 S.E. 2 Avenue, Suite 600
Miami, Florida 33131
Telephone: (305) 537-9565
Facsimile: (305) 537-9567

By: */s/ Marissel Descalzo*
 Marissel Descalzo, Esq.
 Florida Bar No. 669318
 mdescalzo@tachebronis.com
 service@tachebronis.com
 *Counsel for Daniel Markovich*

9

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was filed this day via CM/ECF and

served on all counsel of record appearing on CM/ECF on this 13th day of July, 2021.


By: */s/ Marissel Descalzo*

Marissel Descalzo, Esq.