UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CR-60020-DIMITROULEAS/SNOW

UNITED STATES OF AMERICA

v.

JONATHAN MARKOVICH, and
DANIEL MARKOVICH,

        Defendants.
_____/

## GOVERNMENT'S OMNIBUS MOTIONS IN LIMINE

The United States, by and through undersigned counsel, hereby moves *in limine* for rulings on several evidentiary issues that are likely to arise during trial.

## PROCEDURAL AND FACTUAL BACKGROUND[1]

Defendants J. Markovich and D. Markovich were charged by criminal complaint on September 25, 2020 [D.E. 1], had their initial appearance on September 30, 2020, and were indicted on January 19, 2021 [D.E. 110], for their respective roles in a massive health care fraud and wire fraud conspiracy involving addiction treatment at two facilities they owned and operated. J. Markovich and D. Markovich were charged with conspiracy to commit health care fraud and wire fraud, conspiracy to pay/receive kickbacks in violation of EKRA, and substantive counts of each offense. J. Markovich was also charged with bank fraud, and money laundering (both conspiracy and substantive counts). The alleged scheme spanned from 2017 through 2020; during

---

[1] This Section outlines what the Government expects the evidence will show at trial. The Government expects to prove its case through, among other things, the testimony of former Compass Detox and WAR employees, cooperating defendants, former patients of Compass Detox and WAR, witnesses from the private insurance companies, witnesses from the Florida Department of Children and Families, an expert medical witness, a consultant, case agents, and other witnesses and documents, including e-mails, billing data, and summary exhibits.

1

this time, Second Chance Detox, LLC ("Compass Detox") and WAR Network, LLC ("WAR"), employed hundreds of people and purportedly treated nearly a thousand distinct patients.

Defendants engaged in an array of illegal acts to attract patients to their facilities, and to keep them there. At Compass Detox and WAR, Defendants extracted maximum value from patients by submitting false and fraudulent claims to their insurance plans. Defendants offered and paid bribes and kickbacks to prospective patients in the form of money, gift cards, illegal drugs, prescription medications (including controlled substances), free interstate flights, "piggybacking" on another patients' insurance, and other improper incentives. Once patients arrived at Compass Detox and WAR, Defendants billed patients' insurance plans for services that were not in fact provided, not provided as billed, were so substandard that they failed to serve a treatment purpose, and/or were medically unnecessary. Defendants and co-conspirators provided patients with controlled substances, a "Comfort Drink" consisting of strong, intoxicating compound medications, and illegal drugs so that the patients would appear eligible for detox services at Compass Detox, and most importantly, so that patients would remain at Compass Detox and WAR so Defendants could continue billing their insurance. The Defendants cycled patients through Compass Detox, WAR, and other centers multiple times, for the primary purpose of being able to bill patients' insurers for as much treatment as possible. The goal, the Government alleges, was to get patients to Compass Detox and WAR, often by means of improper kickbacks, and to keep them there, all in an effort to maximize billing. Patients were even, the Government alleges, provided illegal drugs in order to relapse and be re-admitted in order to keep this fraudulent cycle going. In all, Defendants, through Compass Detox, WAR, and other providers, billed or caused to be billed nearly $112 million to patients' private insurance companies.

**LEGAL STANDARD**

The Government's motions are based on the familiar evidence principles set out in the Federal Rules of Evidence. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence which is not relevant is not admissible. Fed. R. Evid. 402. In determining if evidence is relevant under Rule 401, the Eleventh Circuit imposes two requirements: "(1) the evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action." United States v. Glasser, 773 F.2d 1553, 1559 n.4 (11th Cir. 1985). Relevant evidence may be excluded if its probative value is "substantially outweighed by a danger of" unfair prejudice, confusing the issues, and misleading the jury, among others. Fed. R. Evid. 403.

**I. EVIDENCE OR ARGUMENT THAT THE INSURANCE PLANS COULD NOT HAVE BEEN DEFRAUDED BECAUSE THEY PAID THE CLAIMS, OR THAT THE FACT THAT THE INSURANCE PLANS OR REGULATORY AGENCIES DID NOT PREVENT/DISCOVER DEFENDANTS' FRAUD, SHOULD BE EXCLUDED.**

The Government moves *in limine* to preclude Defendants from arguing, offering evidence, or eliciting on direct or cross-examination any "blame the victim" defenses that because the private insurers paid the claims submitted by and through Compass Detox and WAR, the Defendants could not have defrauded these private insurers, or known that their claims were fraudulent. Similarly, the Government moves *in limine* to prevent the Defendant from arguing that the Florida Department of Children and Families (DCF) or other agencies should have discovered the fraud scheme alleged by the Government, or somehow approved Defendants' conduct by issuing

operating licenses.  Such evidence is irrelevant, improperly blames victims of the fraud, and would mislead the jury.

Both patients and their insurance companies were victimized by Defendants' conduct. Defendants should be precluded from arguing that pre-authorizations or payments from insurance companies is evidence that the Defendants did not commit fraud or lacked the requisite intent. Such evidence and arguments that the insurers somehow validated Defendants' alleged criminal conduct by paying their claims should be excluded. These "blame the victim" defenses to a health care fraud case are irrelevant, improper, and mislead the jury. The Eleventh Circuit and its sister circuits have thus expressly forbidden them.

Further, the Government alleges that one way the Defendants covered up their years-long scheme was to create false documents, and to obtain false authorizations from doctors. This enabled the Defendants and their co-conspirators, prior to an inspection or audit, and upon submitting their claims, to conceal their illegal activities.  Such actions made it appear that Compass Detox and WAR's claims were legitimate, and that its patients were being properly treated, and were not at Compass Detox and WAR in the first place due to a system of kickbacks and bribes, nor that they were often provided drugs in order to entice them to stay.

Evidence of insurers' conduct has nothing to do with the Defendants' guilt or innocence as a matter of law, and therefore fails to meet the standard for relevance. It is well established that the negligence of the victim in failing to discover a fraudulent scheme is not a defense to the defendant's criminal misconduct. "A perpetrator of fraud is no less guilty of fraud because his victim is also guilty of negligence." United States v. Svete, 556 F.3d 1157, 1165 (11th Cir. 2009).[2]

---

[2] See also United States v. Coyle, 63 F.3d 1239, 1244 (3rd Cir. 1995) (negligence of victim in failing to discover fraud scheme is not a defense to criminal conduct); United States v. Thomas, 377 F.3d 232, 242-44 (2d Cir. 2004) (same) (collecting cases); United States v. Amico, 486 F.3d 764, 780 (2d Cir. 2007) ("a victim's lack of sophistication is not relevant to the intent element of mail or wire fraud.") (collecting cases).

This concept holds true throughout criminal law. Bank robbers are not absolved of their crimes if the bank security systems are deficient; home invaders are not absolved if homeowners leave a key under the mat; and individuals who perpetrate Ponzi schemes are not innocent if their clients include sophisticated Wall Street brokers. There is no contributory negligence in criminal law.

Defendants cannot point their finger at the insurance companies, or anyone else to excuse their own conduct. The Eleventh Circuit made this clear in Svete when it analyzed the section of the mail fraud statute which reads "any scheme or artifice to defraud." 556 F.3d at 1161–62. This same phrase is part of the health care fraud statute, 18 U.S.C. § 1347, which is modeled after the mail, bank, and wire fraud statutes. United States v. Mermelstein, 487 F. Supp. 2d 242, 254 n.2 (E.D.N.Y. 2007) ("The health care fraud statute is modeled after the bank fraud statute, 18 U.S.C. § 1344, and the bank fraud statute was modeled after the federal mail and wire fraud statutes, §§ 1341 and 1343."). Relying on this history and the Supreme Court's interpretation of "any scheme or artifice to defraud," the Eleventh Circuit, sitting *en banc*, explained:

> Because the focus of [a fraud] statute, like any other criminal statute, is on the violator. … a defendant who intends to deceive the ignorant or gullible by preying on their infirmities is no less guilty. … whatever role, if any, a victim's negligence plays as a bar to civil recovery, it makes little sense as a defense under a criminal statute that embraces "any scheme or artifice to defraud." A perpetrator of fraud is no less guilty of fraud because his victim is also guilty of negligence.

Id. at 1165 (emphasis in original) (internal citations omitted). Following the Eleventh Circuit in Svete, and various other Circuit courts,[3] this Court should exclude any discussion of the insurance

---

[3] See Thomas, 377 F.3d at 243-44 (rejecting argument that victim's foolishness vitiated defendant's fraudulent intent); United States v. Davis, 226 F.3d 346, 358-59 (5th Cir. 2000) (affirming jury instruction that "the naivety, carelessness, negligence, or stupidity of a victim does not excuse criminal conduct, if any, on the part of a defendant"); Amico, 486 F.3d at 780; see also United States v. Colton, 231 F.3d 890, 903 (4th Cir. 2000) ("If a scheme to defraud has been or is intended to be devised, it makes no difference whether the persons the schemers intended to defraud are gullible or skeptical, dull or bright. These are criminal statutes, not tort concepts." (quoting United States v. Brien, 617 F.2d 299, 311 (1st Cir. 1980))).

companies' purportedly negligent conduct. Even if these entities were at fault—which they were not—such evidence would still be irrelevant, improper, and no defense to the charged scheme.

In addition to being irrelevant, evidence concerning the insurers' conduct would be prejudicial under Rule 403. Allowing the Defendants to argue that insurers were negligent in paying the claims at issue, or in failing to discover the fraud sooner, and that this somehow excuses the Defendants' criminal conduct, would mislead the jury. As explained above, the insurers' conduct has no bearing on a determination of the Defendants' guilt. But allowing evidence about such conduct to come before the jury could create the erroneous impression that in order to find the Defendants guilty, the jury must find that the insurance companies could not themselves have discovered the Defendants' misconduct. Because that is not necessary under the law, the Defendants should not be allowed to create such improper inferences.  In addition, such evidence would be misleading, because if the jurors heard lengthy arguments regarding the actions of the insurance plans and regulatory agencies, they might neglect the more important evidence of what the Defendants did, and improperly focus on issues other than the charged fraud scheme. The Defendants should not be allowed to conduct mini-trials regarding the insurance plans claims-payment policies, or DCF's inspection protocols. This shifting of emphasis is plainly unwarranted; it will not help the jury to determine if the Defendants committed fraud.

Any evidence of the insurers' conduct is irrelevant, misleading, and prejudicial. Thus, the Court should preclude the Defendants from introducing any such "blame the victim" defense. Defendants should not be permitted to argue that anyone *should* or *could* have discovered their fraud and denied their claims. Likewise, Defendants should not be permitted to assert that insurers' payment of fraudulent claims led Defendants to believe that their conduct was somehow legitimate or lawful. For the same reasons, the United States does not believe that references to the fact that

6

the Florida Department of Children and Families has permitted Compass and WAR to re-open under new ownership/management bear relevance on the charges to be evaluated by the jury. To the extent that the defense seeks to introduce this evidence, the Government will object on the grounds discussed herein. In addition, such evidence would be irrelevant to the Defendants' intent or conduct during the time period that they ran Compass and WAR.

### II. SPECIFIC ACTS OF GOOD CONDUCT AND/OR PRIOR OR SUBSEQUENT ADDICTION TREATMENT SHOULD BE EXCLUDED.

The Eleventh Circuit has repeatedly held that "[e]vidence of good conduct is not admissible to negate criminal intent." United States v. Camejo, 929 F.2d 610, 613 (11th Cir. 1991); see also, United States v. Moreira, 605 F. App'x 852, 859 (11 Cir. 2015) (per curiam); United States v. Prine, 569 F. App'x 859, 860 (11th Cir. 2014) (per curiam); United States v. Ly, 543 F. App'x 944, 946 (11 Cir. 2013) (per curiam); United States v. Ellisor, 522 F.3d 1255, 1270 (11th Cir. 2008). Therefore, the United States moves *in limine* to preclude the Defendants from arguing or introducing irrelevant evidence of specific acts of good conduct and/or purportedly legitimate billings for Compass Detox and WAR patients beyond the fraud scheme charged by the Government. Thus, the defense should not be permitted to make any reference to: (1) isolated instances of purportedly legitimate billing for patients by Compass Detox and WAR; (2) specific irrelevant instances of good conduct; or (3) prior or subsequent addiction treatment billings at Sober Homes or Addiction Treatment Facilities independent from Compass Detox and WAR for certain patients also billed at some point by Compass Detox and WAR. Such evidence is irrelevant, improper, and should be excluded (or at least severely limited).

Any evidence of legitimate addiction treatment services by Compass Detox and WAR beyond what is charged in the Indictment, and shown by the Government, at trial should be precluded. Stated more completely, any proof that the Defendants (or anyone else) admitted and

7

billed for patients who actually qualified for addiction treatment, and/or provided actual addiction treatment services, beyond what the Government has alleged, must be excluded. The Government does not dispute that the patients at Compass Detox and WAR had serious substance abuse problems and needed help. Indeed, that is what made them fodder for the scheme in the first place, and allowed Compass Detox and WAR to exploit them. Similarly, evidence that the Defendants engaged in legitimate billing for specific patients at Compass Detox and WAR to various private insurers (besides, obviously, the count beneficiaries and other patients submitted as fraudulent by the Government) should be excluded.

It is well-established that, in fraud cases, evidence that a criminal defendant did not commit fraud in all instances is irrelevant. Circuit courts, including the Eleventh (as detailed above) and former Fifth Circuit, have held that evidence that a defendant engaged in legal, honest conduct some of the time is simply irrelevant to the question of whether the defendant engaged in, and/or had knowledge of, the charged fraud because "evidence of good conduct is not admissible to negate fraudulent intent." Ellisor, 522 F.3d at 1270 (quoting Camejo, 929 F.2d at 613 (11th Cir. 1991)).[4] The same is true here.

---

[4] Other Circuits have similarly excluded such evidence. See United States v. Grimm, 568 F.2d 1136, 1138 (5th Cir. 1978) ("Evidence of non-criminal conduct to negate the inference of criminal conduct is generally irrelevant"); see also United States v. Walker, 191 F.3d 326, 336 (2d Cir. 1999) (whether the defendant "had prepared other, non-fraudulent [immigration] applications was simply irrelevant to whether the applications charged as false statements were fraudulent"); United States v. Scarpa, 897 F.2d 63, 70 (2d Cir. 1990) ("A defendant may not seek to establish his innocence … through proof of the absence of criminal acts on specific occasions.") United States v. Neighbors, 23 F.3d 306 (10th Cir. 1994) (in drug case, affirming exclusion of evidence on "materiality" grounds of defendant's advocacy against substance abuse and membership on board of substance abuse center); United States v. Heidecke, 900 F.2d 1155, 1162 (7th Cir. 1990) (in Hobbs Act extortion case, affirming the denial of a motion to compel discovery because "[p]roof that a defendant acted lawfully on other occasions is not necessarily proof that he acted lawfully on the occasion alleged in the indictment").

However, see United States v. Hayes, 219 F. App'x 114 (3d Cir. 2007). In Hayes, the Third Circuit reversed the defendant's conviction for conspiracy to falsify test results for his company's petroleum products because the district court improperly excluded testimony from other employees that defendant never asked them to falsify tests, and never suggested that data falsification was acceptable. Id. at 115-16. The defendant

In Moreira, for example, the jury convicted the defendant of various Medicare fraud and money laundering violations relating to a kickback scheme for a home health agency. Moreira, 605 F. App'x at 854-57. The defendant sought to introduce evidence of her compliance with Medicare rules and regulations in support of her defense that she did not intend to defraud Medicare. Id. at 859. Under a plain-error standard, the Eleventh Circuit upheld the exclusion of such evidence as irrelevant—and thus inadmissible to negate criminal intent—because "[t]he Government did not charge and did not argue that there was no legitimate business conducted at the defendant's clinic. Id.

As the Government's own witnesses in this case will testify, it is possible that some number of Compass Detox and WAR's billings for therapy sessions, prescription of controlled substances, and/or urine testing were sometimes justified. And not every patient drank the intoxicating "Comfort Drink" rendering them unable to participate in therapy. Nevertheless, evidence of the Defendants' other "non-criminal conduct" is not relevant to disprove the criminal intent that the Government will show was present during the time the Defendants engaged in a fraud scheme. Put another way, the fact that Compass Detox and WAR may have billed appropriately for some of its patients on some occasions does nothing to negate Defendants' intent to conspire to defraud the insurance plans. Because this evidence cannot negate their criminal intent, it is irrelevant and should be excluded.

---

maintained that he should have been permitted to introduce the evidence to negate his involvement in the conspiracy. Id. at 116. The Third Circuit agreed, finding that it should have been admitted under Rules 404(b) and 403. Id. at 116-19. But in so doing, the court distinguished Camejo, finding that "[t]he disputed evidence in Camejo was wholly unrelated to the charged conspiracy and therefore irrelevant to the defendant's criminal intent vis à vis the charges at issue." Id. at 119.

This case, the Government submits, is akin to the Eleventh Circuit precedent cited herein. Like Camejo, Ellisor, and Moreira, for instance, the fact that Compass Detox and WAR properly treated other patients has no bearing as to whether Defendants defrauded private insurance plans as alleged in the Indictment.

If the Defendants want to present a qualified and properly noticed witnesses to testify that the "Comfort Drink" was somehow medically justified and legitimate—subject to this Court's approval and over the Government's objection since this would require expert testimony which this Court previously excluded in its Order on July 12 [D.E. 231]—they can. Similarly, Defendants can try to prove their system of kickbacks did not exist or was permissible. If Defendants wish to show absenteeism was not rampant at billed therapy sessions at Compass Detox and WAR, or that the patients in the charged substantive health care fraud counts and/or discussed by the Government's expert and consultant actually did receive the treatments they were billed for, they can try to put on such evidence. But a parade of unrelated witnesses coming into Court to show that they received and/or benefitted from treatment at Compass Detox and WAR (or anywhere else) that are not tied to the Government's accusations such as in the examples described above (or otherwise) is irrelevant, and has no place in this trial.

Along these very same lines, the Eleventh Circuit in Ellisor—a mail-fraud case involving a scheme to promote and sell tickets for a Christmas show that never took place—affirmed the district court's ruling precluding the defendant from offering evidence that he had produced actual shows in the past to negate his fraudulent intent. Ellisor, 522 F.3d at 1259-62, 1270-71. The Panel reasoned that "[t]he fact that [the defendant] purportedly produced other shows does not bear on his intent to defraud with respect to the Christmas show [i.e., the charged conduct], and is therefore irrelevant." Id. at 1270. The Ellisor court also found the particular instances of legitimate conduct that the defendant sought to offer to be specific instances of good character. Under Federal Rules of Evidence 404(b) and 405(b), the Eleventh Circuit ruled these enumerated acts of "good character" inadmissible. Id. at 1270-71. Indeed, in a partial hospitalization program (PHP) case tried in this district alleging health care fraud conspiracy against multiple defendants, as here,

10

Judge Seitz cited Ellisor when she expressly excluded evidence of legitimate billing. [See D.E. 866, United States v. Willner, et al., Case No. 11-20100-CR-SEITZ].

Ellisor cites to United States v. Marrero, 904 F.2d 215 (5th Cir. 1990), a false claims case involving overbilling and billing for services not rendered by a psychologist, that is particularly instructive here. Ellisor, 522 F.3d at 1270-71 and n.21. Marrero precluded the psychologist from entering evidence of her legitimate billings, noting that "[t]he fact that [the defendant] did not overcharge in every instance in which she had the opportunity to do so is not relevant to whether she, in fact, overcharged as alleged in the indictment." Id. at 1260 (emphasis added). The panel also excluded as irrelevant a survey of all of the defendant's patients, which supposedly showed that seventy-seven out of the ninety-nine responding patients attested that her office's bills were accurate. Id. (citing Grimm, 568 F.2d at 1138).[5] The Fifth Circuit rejected Marrero's contentions, and found the evidence was properly excluded. First, her character in the fraud case was simply not an essential element of the charges. Id. Moreover, her attempt to prove lack of intent through specific instances of good conduct was not simply disfavored; it was specifically prohibited under Fed. R. Evid. 405(b).[6] Id.

Like the Marrero case, Defendants' character is not an essential element of the charges. See Fed. R. Evid. 405(b). Indeed, such evidence is irrelevant, because the Government has not charged, and will not argue, that there was no legitimate business conducted at Compass Detox and WAR. See Moreira, 605 F. App'x at 859. The Government will argue that the patterns of

---

[5] See also Moreira, 605 Fed. Appx. At 859 (district court properly precluded defendant from presenting evidence that some of the claims filed may have been for services legitimately provided to eligible patients without the payment of kickbacks).

[6] Indeed, it is axiomatic that under Rules 404(a)(2)(A) and 405(a), when appropriate, the defendant is limited to general reputation and opinion testimony of his particular character trait. But Rule 405(b) specifically prohibits any specific instances of good conduct.

fraud it detailed above in the Factual Background Section were widespread, to be sure. But any anticipated evidence of specific instances of Defendant's "good" conduct, including the purported proper treatment of a discrete number of patients, the fact that some patients were not procured through kickbacks, and/or compliance with insurance reimbursement policies on other occasions, is not admissible under Rules 404 and 405. Ellisor, 522 F.3d at 1270-71. If Defendants want to prove that the fraudulent patterns of conduct alleged at Compass Detox and WAR did not exist, they may do that, but not through isolated instances of supposed "good" conduct.

Moreover, isolated evidence of "non-criminal conduct" with respect to claims to private insurance, kickbacks, and/or the travel of certain patients to Florida, even if marginally probative, should be excluded under Rule 403 because it is likely to be confusing to the jury. Such collateral evidence would confuse the issues in the case, which are properly focused on the patterns of the Defendants' fraudulent billing of the insurance plans, kickbacks, and other charges.

And, finally, the Government submits that the arguments for exclusion discussed above are even more true as to evidence whether any Compass Detox and WAR patients were treated (properly or otherwise) at other substance abuse treatment centers in South Florida or elsewhere either before or after the conspiracy period, if such evidence is being used to confer legitimacy on what Compass Detox and WAR did, and/or to negate Defendants' fraudulent intent. Such evidence is irrelevant, not probative of the issues at trial, and would be improper, because it would be introduced as evidence to negate the intent to commit fraud as prohibited by the case law previously discussed. The issue is not how patients were treated at other addiction treatment facilities, nor the condition they were in when they arrived there, but how they presented when they came to Compass Detox and WAR, and how they were treated at these facilities.

### III. DEFENDANTS SHOULD NOT BE ALLOWED TO REFER TO THE FACT THAT OTHER INDICTED CO-CONSPIRATORS ARE NOT ON TRIAL, NOR THAT THEY HAVE BEEN INDICTED.

Eight defendants were charged in this case, and while motions to sever were denied, the trial was bi-furcated due to Speedy Trial motions, and five of the Markoviches co-defendants face trial on February 22, 2022. Given this relatively unique situation, the Government intends to seek a jury instruction that the jury may not draw any inference from the fact that any persons in addition to the Defendants are not on trial here, that they should not speculate as to why these persons are not on trial, and not draw any inferences, favorable or unfavorable, toward the Government or the Defendants from the fact that co-conspirators are not on trial at the same time as Defendants. Such jury instructions have been used by other courts in this district.[7] The Government also moves to exclude any improper reference to the fact that other co-Defendants are not on trial before this jury. Of course these individuals will come up during the trial, but any reference to their prosecution status, and their absence, cannot be allowed. Such information might prevent jurors from addressing the guilt or innocence of the Defendants.[8] Defendants may of course argue that

---

[7] See United States v. Marie Lucie Tondreau, Case No. 14-CR-20349-SCOLA (S.D. Fla. 2014), Court's Instructions to the Jury [D.E. 106 at 5]; United States v. Nivis Martin, Case No. 13-CR-20457-COHN (S.D. Fla. 2013), Court's Instructions to the Jury [D.E. 144 at 7]; United States v. Math Benjamin, 12-CR-20707-COOKE, (S.D. Fla. 2012), Court's Instructions to the Jury [D.E. 106]; United States v. Herrera et al., 12-CR-20173-LENARD (S.D. Fla. 2012), Court's Instructions to the Jury [D.E. 66].

[8] The Government is unaware of any case law addressing this precise situation, but points out an instructive analogous situation, in which the decision to exclude references to a co-conspirator's acquittal were excluded. In United States v. Irvin, 787 F.2d 1506, 1516-17 (11th Cir. 1986), the Eleventh Circuit upheld the district court's ruling *in limine* that the defendant could not refer to or solicit information during direct or cross-examination regarding the fact that his co-defendants had been acquitted of the same conduct in a prior proceeding. The Court found that the acquittals were hearsay, were irrelevant and their admission would have violated Rule 403. The Court cited United States v. Kerley, 643 F.2d 299 (5th Cir. 1981), where the former Fifth Circuit held that the district court properly excluded evidence of the defendant's acquittal in state court arising out of the same incident that was the basis of the offense charged in the federal indictment. See also United States v. Kendrick, 682 F.3d 974, 986 (11th Cir. 2012) (same).

they are not medical professionals, and that it was the doctors that made the medical decisions, but they may not imply or argue that the Government put the wrong people before the jury and should have put the doctors on trial.

    **IV. DEFENDANTS SHOULD BE PRECLUDED FROM MAKING ANY "ADVICE OF COUNSEL DEFENSES" UNLESS THEY PROVIDE PROPER NOTICE, AND MAKE A SUFFICIENT SHOWING THAT THEY ARE ENTITLED TO ASSERT SUCH A DEFENSE.**

The Government asked Defendants earlier today whether they intend to assert an advice of counsel defense, to which counsel for D. Markovich responded that it was too early to tell, but if they did decide to asset such a defense, they would let the Government know. Thus, the Government has received no Notice of such a defense (formal or otherwise), nor any discovery related to it, from any Defendant. The Government requests such Notice and discovery now; without it, the Government will be at a profound disadvantage at trial.

In addition, it is black-letter law in the Eleventh Circuit that "[i]n order to qualify for an instruction on good faith reliance on the advice of counsel, a Defendant must show that: (1) he fully disclosed to his attorney all material facts that are relevant to the advice for which he consulted the attorney; and (2) thereafter, he relied in good faith on advice given by his attorney." United States v. Hill, 643 F.3d 807, 851 (11th Cir. 2011) (citing United States v. Miles, 290 F.3d 1341, 1354 (11th Cir. 2002); United States v. Condon, 132 F.3d 653, 656 (11th Cir. 1998); United States v. Johnson, 730 F.32d 683, 686 (11th Cir. 1984)). A district court may properly decline to give an advice of counsel instruction "if it lacks evidentiary support or is based upon mere suspicion or speculation." United States v. Romero, 542 F. App'x 879, 882 (11th Cir. 2013) (citing Condon, 132 F.3d at 656). In light of this basic concept, an advice of counsel defense can be precluded if counsel have not Noticed it, nor provided any justification for it. The Government

moves the Court *in limine* to preclude such evidence, or an advice of counsel instruction, absent such Notice and discovery in a reasonable time before trial.

## CONCLUSION

For the foregoing reasons, the Government requests that the Court grant the Government's Motions in Limine.

## Rule 88.9 Certification

Counsel for the Government certifies that he conferred with defense counsel in a good faith effort to resolve the issues raised in these Motions, and they oppose these Motions.

Dated: July 16, 2021                                    Respectfully submitted,

                                                                                  JUAN ANTONIO GONZALEZ
                                                                                  ACTING UNITED STATES ATTORNEY
                                                                                  SOUTHERN DISTRICT OF FLORIDA

                                                                                  JOSEPH S. BEEMSTERBOER
                                                                                  ACTING CHIEF, FRAUD SECTION
                                                                                  CRIMINAL DIVISION
                                                                                 DEPARTMENT OF JUSTICE

By:   */s/ James V. Hayes*
        JAMES V. HAYES (FL Bar # A5501717)
        Senior Litigation Counsel
        JAMIE DE BOER (FL Bar #A5502601)
        Trial Attorney
        United States Department of Justice
        Criminal Division, Fraud Section
        1400 New York Avenue, N.W.
        Washington, D.C. 20005
        Telephone: (202) 774-4276
        James.Hayes@usdoj.gov
        Jamie.DeBoer@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 16, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

                                                          *James V. Hayes*