UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CR-60020-DIMITROULEAS/SNOW

UNITED STATES OF AMERICA

v.

JONATHAN MARKOVICH, and
DANIEL MARKOVICH,

**Defendants.**
_____/

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DISCLOSURE AND IDENTIFICATION OF
*BRADY* AND *GIGLIO* MATERIAL**

The Government hereby opposes Defendants' Motion to Compel Disclosure and Identification of *Brady* and *Giglio* Material ("Motion"). [D.E. 233.]

Defendants' Motion seeks an order far beyond the Government's *Brady* and *Giglio* obligations. Defendants ask the Court to compel the Government to exhaustively search and identify anything that might possibly interest the defense. *Brady* and *Giglio* do not extend that far. The Government is aware of, and, as described below, in compliance with, its discovery obligations. Defendants' Motion therefore should be denied.

First, the Government has made twelve discovery productions, consisting of 1,959,043 pages of Bates-stamped documents, four patient file portals, voluminous native spreadsheets of insurance data, cell phone extracts, and other material. These disclosures have been both fulsome and timely.

1

Second, while discovery in this case is voluminous, it is not unmanageable.[1]  To aid the Defendants in reviewing the discovery, the Government has provided indexed discovery logs that correspond to clearly labeled file folders organizing the discovery by category, such as interview reports, search warrant materials, subpoena returns, and the like.  Many categories are further broken down into sub-folders to aid the defense in readily identifying relevant documents.  The more voluminous records consist of the patient files—which have been produced in both PDF and electronic portal formats—and emails.  The patient file portals are easily searchable; the Defendants (who know which patients the Government interviewed, which patients its expert and consultant reviewed, and which patients the Government intends to call as witnesses) can search the portals by patient name and easily navigate between that patient's different admissions and different file types (such as therapy notes, admissions paperwork, lab results, and more).  Likewise, the emails were produced as a load-ready production that could easily be loaded into a database such as Relativity, making them searchable.

Third, in the course of preparing for trial, the Government has identified documents for the Defendants that are potentially exculpatory.  As the Defendants note in a footnote in the middle of their brief, this is the kind of disclosure they are looking for in filing this Motion.  The Government will continue to make sure disclosures like this if the Government identifies additional documents of this sort.

---

[1] The Government has emphasized the volume of discovery materials in this case on multiple occasions, and will continue to do so, to ensure that the Defendants and the Court are aware of the volume of discovery that is expected to be reviewed on a tight timetable, by an August 2nd trial date chosen by these Defendants. Indeed, multiple other Defendants in this case have elected to have more time to review this discovery before going to trial. Reviewing all of the discovery by August 2nd is an indisputably ambitious task, but it is one the Defendants have assumed voluntarily. The Defendants' self-imposed timetable does not somehow raise the bar on the Government's obligations. Defendants asked for this trial date; they got it.

Fourth, Defendants complain about the Government's expert disclosures, but what they omit is that the Government, although it did not have to, disclosed the identity, case numbers of prior testimony, qualifications, and opinions of its expert on the same day the Defendants were charged in September 2020. The Defendants also omit that the Government provided them with two expert reports and an additional pleading summarizing the expert's opinions, along with the subject matter of numerous additional witnesses. But the Government's disclosures did not stop there. The Government provided transcripts of the expert's prior testimony well in advance of any Jencks deadline, which covered information about the expert's former employer that the Defendants (wrongly) believe constitutes *Giglio*. And when the Defendants inquired about this issue, the Government provided additional information concerning a *qui tam* suit involving the expert's former employer (including publicly available materials the Defendants could have easily obtained on their own). Having received such fulsome disclosures, Defendants now complain that the Government has not yet disclosed how much money it has paid the expert; yet the Government fully intends to do so (and will do so for the consultant paid by the Government as well), but such disclosures are simply not due at this date, and there is no reason to compel the Government to do this now. Defendants have not provided any expert discovery at all, despite this Court's Order precluding their expert (subject to being revisited at the end of the Government's case). [D.E. 231]. Defendants have made no effort to cure their expert discovery deficiencies, yet complain when the Government provided expert discovery far beyond what the Rules require.

Thus, it is unclear why the Defendants believe they have cause for complaint at this stage, when discovery and trial prep are ongoing, and the Government continues to make expansive and timely disclosures. It appears that what D. Markovich requests is that the Government exhaustively search for and identify any piece of evidence that might be of interest to the

3

Defendants. Neither *Brady* nor *Giglio* impose such a requirement, nor is there anything so unusual about the discovery in this case that would necessitate that. The Motion should be denied.

## BACKGROUND

On September 28, September 29, September 30, and October 2, 2020, United States Magistrate Judge Patrick M. Hunt conducted initial appearances for Defendants Jonathan Markovich, Richard Waserstein, Daniel Markovich, Christopher Garnto, Dr. Andrew Lieberman, Dr. Jose Santeiro, Dr. Jeffrey Draesel, Jr., Mario Kustura, and Francisco Bosch, and entered a paperless Standing Discovery Order as to these nine defendants. [D.E. 6, 10, 17, 18, 19, 20, 23, 24, 25.]

Since that time, the Government has made the following discovery productions:

| PRODUCTION DATE | TOTAL PAGES | DESCRIPTION OF PRODUCTION |
|---|---|---|
| 12/17/2020 | 359,567 | • The defendants' criminal histories;<br>• Voluminous financial records;<br>• Payroll records;<br>• Call detail records for various defendants and individuals related to the case;<br>• Ride-share data;<br>• Police reports;<br>• Flight and travel records;<br>• Voluminous insurance billing data and enrollment records;<br>• Addiction treatment licensing paperwork;<br>• Patient files, including PDF patient files and four interactive web portals;<br>• Multiple Facebook accounts and corresponding data;<br>• Prescription drug monitoring data;<br>• Open source materials, such as key filings in a civil litigation, Florida Secretary of State records, and website and social media screenshots; and<br>• Text messages provided by certain witnesses and cell phone extracts. |
| 3/1/2021 | 6,335 | • 15 additional subpoena returns, including financial records, deposition transcripts, flight records, and police reports;<br>• Dozens of interview reports prepared by law enforcement, as well as numerous surveillance reports; and<br>• An additional cell phone extract. |

| PRODUCTION DATE | TOTAL PAGES | DESCRIPTION OF PRODUCTION |
|---|---|---|
| 3/25/2021 | 20,557 | <ul><li>Several additional subpoena returns;</li><li>Additional reports of interview;</li><li>CV of the Government's medical expert; and</li><li>Grand jury transcript, produced at one defendant's request.</li></ul> |
| 5/18/2021 | 8,073 | <ul><li>Additional interview reports prepared by law enforcement as well as incident reports;</li><li>Photos, DCF information; and</li><li>10 additional subpoena returns, including voluminous information and patient files pertaining to chiropractic services at issue in this case.</li></ul> |
| 5/26/2021 | 1,553,265 | <ul><li>Emails and documents provided by Compass Detox and WAR.</li></ul> |
| 6/11/2021 | 515 | <ul><li>Additional interview reports prepared by law enforcement;</li><li>Title 42 orders and affidavits; and</li><li>Search warrants and affidavits.</li></ul> |
| 6/24/2021 | 4,387 | <ul><li>Registration documents from insurers;</li><li>Certified corporate records;</li><li>Photos of the "comfort drink" and related incidents; and</li><li>Compass Detox & WAR's policies and procedures.</li></ul> |
| 7/9/2021 | N/A (natively produced) | <ul><li>Garnto cell phone extract.</li></ul> |
| 7/9/2021 | 4,716 | <ul><li>Expert report, transcripts, and additional information requested by Markoviches (which had been previously provided to the Markoviches);</li><li>Insurance reimbursement policies;</li><li>Files provided by witnesses;</li><li>Blog posts from Compass Detox's website;</li><li>Two additional subpoena returns;</li><li>Additional subpoena returns; and</li><li>Additional interview reports prepared by law enforcement.</li></ul> |
| 7/14/2021 | 715 | <ul><li>Reproduction of a cell phone;</li><li>Messages provided by Christopher Garnto;</li><li>Additional reports of interview prepared by law enforcement; and</li><li>An additional subpoena return.</li></ul> |
| 7/16/2021 | N/A (natively produced) | <ul><li>Bakhshi cell phone extract.</li></ul> |

| PRODUCTION DATE | TOTAL PAGES | DESCRIPTION OF PRODUCTION |
|---|---|---|
| 7/19/2021 | 904 | <ul><li>Additional reports of interview;</li><li>Mortgage documents provided by Garnto;</li><li>Plea agreement and factual proffer for Mario Kustura;</li><li>Certified pharmacy license for Compass Detox; and</li><li>Re-production of patient's cell phone extract.</li></ul> |

In addition, the Government disclosed the following information about its expert, Dr. Kelly Clark:

- September 25, 2020: Criminal complaint containing multiple pages describing Dr. Clark's background and qualifications, case citations for substance abuse treatment fraud cases in which she has testified, and summary of opinions.

- March 25, 2021: Dr. Clark's CV.

- June 11, 2021: Two expert reports (15-page pre-Complaint report; 35-page pre-trial expert report); detailed summary filed on docket of Dr. Clark's opinions as well as scope of testimony of additional potential Government witnesses; transcripts of Dr. Clark's prior testimony in two recent addiction treatment fraud trials and a *Daubert* hearing; names of patients that Dr. Clark evaluated in her report.

- June 25, 2021: Per Defendant's inquiry, an explanation of the Government's understanding of Dr. Clark's involvement (or, in reality, lack thereof) in conduct potentially underlying Clean Slate's settlement with the United States Attorney's Office in Massachusetts.

- June 30, 2021: Transcript of recent trial in which Dr. Clark testified against the Government, as well as the expert notice of Dr. Clark in that case; documents where Dr. Clark is mentioned in a filing pertaining to a *qui tam* civil lawsuit involving Clean Slate, including publicly available documents.

The Government continues to produce discovery to Defendants as it becomes available to the Government, including additional interview reports and documents provided by cooperators or other witnesses. And the Government's investigation is ongoing and will continue through the August 2nd trial and at least until the February 2021 trial. For example, the Government has extracted additional records off the cell phone of Christopher Garnto, which was previously seized. The Government has submitted this cell phone extract for a filter review, and will produce any portions of the cell phone extract cleared by the filter team as soon as possible.

## **LEGAL STANDARD**

The Government has a duty to disclose evidence in its possession that is favorable to the accused, where the evidence is material either to guilt or punishment. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *United States v. Bagley*, 473 U.S. 667, 674 (1985). Such disclosures include information about the prosecution's witnesses which may relate to the witness's credibility. *Giglio v. United States*, 405 U.S. 150 (1972).

Courts have held that where the Government makes discovery available in a format useful to defendants, it has fulfilled its obligations under *Brady*. *See United States v. Maxwell*, 2006 WL 8439796, at *6 (S.D. Fla. July 14, 2006) ("*Brady* simply requires that information be produced in such a way that it will be of value to the accused."). Courts have further found that where documents are made searchable and/or feature indexes, the information contained within them is not considered "suppressed" for *Brady* purposes. *See United States v. Parnell*, 723 F. App'x 745, 752 (11th Cir. 2018) ("Given that [Defendant] was able to search the documents, they were not suppressed for purposes of *Brady*."); *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 825 F. Supp. 2d 451, 457 (S.D.N.Y. 2011) (finding that the government had fulfilled its *Brady* obligations in part because it took "additional steps to facilitate the defendants' review of that material" by making documents searchable and providing indices); *United States v. W. R. Grace*, 401 F. Supp. 2d 1069 (D. Mont. 2005) (finding that the government had complied with *Brady* obligations in part because it made documents searchable, where most discovery documents were records from defendants' own company); *United States v. Skilling*, 554 F.3d 529, 577 (5th Cir. 2009) (finding the fact that discovery material was electronic, searchable, and indexed relevant to conclusion that government's use of open file discovery did not violate *Brady*), *aff'd in part, vacated in part, remanded*, 561 U.S. 358 (2010).

# ARGUMENT

The Government is aware of and has complied with its discovery obligations under *Brady*, *Giglio*, and their progeny. The Government has complied with its *Brady* obligations because it has turned over relevant information, produced discovery in a format that makes the information useful to Defendants, and has specifically identified known material that is potentially exculpatory to Defendants. The Government is aware that its *Brady* obligations are ongoing and will continue to comply with them by producing discovery and, if the Government identifies any additional records that may have exculpatory value as the Government prepares for trial, identifying such material for Defendants.

## I. THE GOVERNMENT HAS COMPLIED, AND WILL CONTINUE TO COMPLY, WITH ITS DISCOVERY AND *BRADY* OBLIGATIONS.

The Defendants vastly exaggerate the Government's obligations under *Brady*, and wrongly imply that the Government has violated its obligations. Tellingly, they point to no instances where the Government has withheld *Brady* material and the instances they try to paint as a failure by the Government (*i.e.*, disclosures concerning the expert) are actually examples of where the Government disclosed far more than it was required to provide.

### A. The Government Has Taken Steps To Facilitate Defendants' Review Of Discovery.

Although the Government has produced a substantial volume of information, it is a manageable amount of material and the Government has taken additional efforts to facilitate the Defendants' review of this material. The vast majority of the records produced in discovery are records that were maintained by Compass Detox and WAR, which the Markoviches operated. The discovery productions have been organized in clearly labeled file folders, making it easy to identify and access certain types of records. The Government has provided indices corresponding to each

production. And the most voluminous records (along with the majority of other records) are readily searchable, including the patient files and emails. That suffices in cases of equivalent or even far greater volumes of discovery than here. *See Parnell*, 723 F. App'x at 752 (finding that where the government produced hundreds of thousands of documents, "they were not suppressed for purposes of *Brady*" because "[Defendant] was able to search the documents," and the Government provided a Bates index); *Rubin/Chambers*, 825 F. Supp. 2d at 457 (finding that the government had fulfilled its *Brady* obligations in part because it took "additional steps to facilitate the defendants' review of that material" by making documents searchable and providing indices).[2]

The Government has also identified certain documents during trial preparation that may have exculpatory value, and provided the document identifiers to the Defendants. If any further such documents are identified during trial preparation, the Government will identify them to Defendants. In addition, the Government filed a 60-page criminal complaint in this case in September 2020, which summarizes much of the Government's evidence in great detail, including (a) witness statements; (b) specific transactions the Government believes are kickbacks; (c) examples of specific Facebook chats that the Government believes evidence the conspiracy; and (d) examples, including dates of specific therapies or lab tests, that the Government believes evidence the pattern of fraudulent activity described at length in the Indictment. In addition, the Government provided a 38-page draft exhibit list a month before trial, which identified numerous emails and specific chats or other records that the Government believes are material to its case.

---

[2] *See also W. R. Grace*, 401 F. Supp. 2d at 1080 (D. Mont. 2005) (finding that where the Government produced over 3 million pages of discovery, the government had complied with *Brady* obligations because it made documents searchable and most discovery documents were records from defendants' own company); *Skilling*, 554 F.3d at 576 (finding that where the Government produced "several hundred million pages of documents," the fact that discovery material was electronic, searchable, indexed relevant to conclusion that government's use of open file discovery did not violate *Brady*).

### B. Defendants' Requests Go Far Beyond What *Brady* And *Giglio* Require.

*Brady* does not require the government to "conduct a defendant's investigation or assist in the production of [its] case." *United States v. Marrero*, 904 F.2d 251, 261 (5th Cir.1990); *see also Skilling*, 554 F.3d at 576 (5th Cir. 2009) ("As a general rule, the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence."). This is true even where the discovery file is extremely voluminous—amounting to "several hundred million pages of documents." *Id*. Were the Government required to scour all produced materials for anything of use to the defense, this would "place prosecutors in the untenable position of having to prepare both sides of the case at once." *United States v. Ohle*, No. S3 08 CR 1109 JSR, 2011 WL 651849, at *4 (S.D.N.Y. Feb. 7, 2011), aff'd, 441 F. App'x 798 (2d Cir. 2011). *Brady* places no such burden on the prosecution, and nothing in Defendants' Motion changes that.

The Defendants' reliance on *Salyer* is not to the contrary. *See United States v. Salyer*, 2010 WL 3036444 (E.D. Cal. Aug. 2, 2010). In *Salyer*, the court required the Government to identify *Brady* material within the discovery file because at that point, the Government had "made no efforts" to segregate exculpatory information or identify it to the defense. *Salyer*, 2010 WL 3036444, at *4. The question in *Salyer* was whether the Government had met its burden under *Brady* by "simply by turning over a mountain of "everything" acquired over half a decade, and telling defense counsel nothing about where exculpatory/impeaching information [could] be found." *Salyer*, 2010 WL 3036444, at *6. That is not the issue here. The Government has made it easy for the defense to search and examine the discovery, has produced discovery early and on a continuing basis, and has identified records that the Government believes have exculpatory value. Beyond that, the Government provided a massive criminal complaint affidavit outlining the case, as well as an exhibit list a month ahead of trial—effectively identifying "hot documents" or

10

evidence for the defense. *See United States v. Salyer*, 271 F.R.D. 148, 154-55 (E.D. Cal. 2010) ("Prosecutors have a duty to disclose what *they* reasonably view as exculpatory or impeaching material.") (citing *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)).

Likewise, the authority *Salyer* cites for the notion that the Government must exhaustively "scour" the record for potential exculpatory material, *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), is easily distinguished. In *Kyles*, the Supreme Court criticized a prosecutor's failure to ask the police for exculpatory evidence and clarified that the prosecutor was under an affirmative obligation to do so under *Brady*. Clearly neither *Kyles* nor *Brady* announced a blanket requirement that the Government must affirmatively scour every single document in the discovery file to find all possibly exculpatory material, much less all material that might interest the defense. Again, "as a general rule, the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence." *Skilling*, 554 F.3d at 576.

In any event, D. Markovich, a CEO of Compass Detox, is well-positioned to know which documents within the discovery file are likely to be exculpatory. In determining whether the Government has complied with its obligation to identify *Brady* material, Courts often consider whether the Defendants are familiar with the contents of the discovery file. *Maxwell*, 2006 WL 8439796, at *6 (S.D. Fla. July 14, 2006) (holding the government had complied with *Brady* in part because defendant, "would be at least as familiar, if not more familiar than the government, with the kinds of documents on those hard drives"); *Skilling*, 554 F.3d 529 ("Skilling contends that the government should have scoured the open file in search of exculpatory information to provide to him. Yet the government was in no better position to locate any potentially exculpatory evidence than was Skilling."); *W. R. Grace*, 401 F. Supp. 2d at 1080 ("There is no reason to assume that the government is better equipped through resources or knowledge to locate exculpatory documents

than are the Defendants."). As the vast majority of the discovery file is made up of records maintained by Defendants' own businesses, Defendants are far better equipped than the Government to locate additional exculpatory evidence in the discovery, should such material exist.

## II. THE GOVERNMENT MET ITS EXPERT DISCLOSURE OBLIGATIONS.

D. Markovich claims that the Government has not fulfilled its obligation to disclose *Giglio* information about the Government's intended expert witness, Dr. Clark. However, this charge is meritless. The Government has made extensive disclosures about Dr. Clark to date, and done so incredibly early.

*Giglio* requires the Government to disclose evidence material to its witnesses' credibility. *Giglio*, 405 U.S. at 154 (citing *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). This includes disclosure of "facts that might motivate a witness in giving testimony." *Smith v. Kemp*, 715 F.2d 1459, 1467 (11th Cir. 1983). The Government has disclosed extensive information about Dr. Clark, including her CV and prior testimony in addiction treatment cases. In response to Defendants' request for more information about Dr. Clark's involvement with Clean Slate, the Government replied the same day with information about the settlement, and directed defense counsel to specific pages of a transcript of Dr. Clark's prior testimony, which was already in defense counsel's possession. (The transcripts are not particularly long and defense counsel would have been able to find such information relatively easily.) The Government also provided additional information, including an additional transcript of Dr. Clark's testimony which did not even pertain to substance abuse treatment. Defendant's motion highlights that the Government has not yet disclosed payments made to Dr. Clark in exchange for her testimony. [Def. Mot. at 3]. The Government will, of course, disclose payments made to Dr. Clark and any other witnesses it calls, but is simply not required to do so at this time. *United States v. Rinn,* 586 F.2d 113, 119 (9th Cir.

1978) ("[I]nformation concerning 'favor[s] or deals' merely goes to the credibility of the witness . . . [and thus] need not be disclosed prior to the witness testifying.")

## CONCLUSION

For the foregoing reasons, the Government requests that the Court deny Defendants' motion to compel disclosure and identification of additional *Brady* and *Giglio* material.

Dated: July 20, 2021                                    Respectfully submitted,

                                                    JUAN ANTONIO GONZALEZ
                                                    ACTING UNITED STATES ATTORNEY
                                                    SOUTHERN DISTRICT OF FLORIDA

                                                    JOSEPH S. BEEMSTERBOER
                                                    ACTING CHIEF, FRAUD SECTION
                                                    CRIMINAL DIVISION
                                                    DEPARTMENT OF JUSTICE

                      By:     */s/ James V. Hayes*
                              JAMES V. HAYES (FL Bar # A5501717)
                              Senior Litigation Counsel
                              JAMIE DE BOER (FL Bar #A5502601)
                              Trial Attorney
                              United States Department of Justice
                              Criminal Division, Fraud Section
                              1400 New York Avenue, N.W.
                              Washington, D.C. 20005
                              Telephone: (202) 774-4276
                              James.Hayes@usdoj.gov
                              Jamie.DeBoer@usdoj.gov

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on July 20, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*James V. Hayes*