**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 21-CR-60020- DIMITROULEAS/SNOW**

**UNITED STATES OF AMERICA**

v.

**JONATHAN MARKOVICH, and**
**DANIEL MARKOVICH,**

       **Defendants.**
_____/

**JONATHAN MARKOVICH AND DANIEL MARKOVICH'S REPLY**
**IN FURTHER SUPPORT OF OMNIBUS MOTIONS IN *LIMINE***

Defendants Jonathan Markovich and Daniel Markovich (collectively referred to as the "Markoviches"), hereby file this Reply in Further Support of Omnibus Motions in *Limine*, and in support thereof state as follows:

    **I.**    **LAY WITNESSES MAY NOT PROVIDE EXPERT TESTIMONY**

The Federal Rules of Evidence do not allow for the type of mixed lay/expert testimony that the government has made clear it intends to introduce at trial. The Federal Rules of Evidence only envision two types of testimony: lay testimony governed by Federal Rule of Evidence 701 and expert testimony governed by Federal Rule of Evidence 702. Federal Rule of Evidence 701(c) explicitly states: "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is … not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." This subsection was added to Federal Rule of Evidence 701 to "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." *See* Fed. R. Evid. 702, advisory committee notes, 2000 amendments.

Despite the clear distinction in the federal evidentiary rules between lay and expert testimony, the government intends to have lay witnesses testify that patient were recycled, that patients did not belong in treatment, the need for detox, that patients were hallucinating, and that patients could not benefit from longer treatment stays. The government's opposition masks this clearly expert testimony in alternative clothing so that lay witnesses can somehow testify to it. However, dressing up such expert testimony with claims of recruiters giving patient drugs and claims that patients were heavily sedated does not make it admissible. *See* Opposition [D.E. 249 at 2-3]. Not only is this type of testimony expert testimony, but it is also unclear how a nurse, therapist, and/or behavioral health technician could have observed a patient receiving drugs from a recruiter. It is also unclear how these witnesses would know that a patient was given drugs by a recruiter and readmitted to Compass. This is evidence that such witnesses could have only learned through inadmissible hearsay. Furthermore, if a nurse did observe a recruiter giving a patient drugs, that nurse has a higher duty to report such activity, or else face licensing issues.

The Markoviches do not dispute a lay witness's ability to testify about any relevant matter the witness has personally observed; the concern is that lay witnesses will offer "opinions" that are the subject of expert testimony without complying with the strictures of Federal Rule of Evidence 702. The government should not be permitted to elicit from lay witness's opinion testimony that should be based on scientific, technical, or other specialized knowledge. If the government intends to elicit scientific testimony from witnesses, the Court should require the government to immediately provide expert summary reports for these witnesses that comply with Federal Rule of Criminal Procedure 16(a)(1)(G) so that any such witnesses can be subjected to *Daubert* challenges. Furthermore, if the government intends to have patients testify about their personal observations and experiences, the Court should hold a preliminary hearing to confirm the

patients' competency to testify because many of the patients who have been interviewed by the government have major mental health diagnoses coupled with continued substance abuse.

## II. WHILE EVIDENCE OF ALLEGED CRIMINAL CONDUCT IS ADMISSIBLE, PREJUDICIAL EVIDENCE REGARDING WEALTH IS INADMISSIBLE.

The government's opposition makes clear that it does intend to introduce so call "wealth evidence" at trial, including evidence regarding a "luxury lifestyle" funded by Compass and/or WAR. This is wholly inappropriate and inaccurate. The government has subpoenaed every single bank account held by Richard Wasserstein, Jonathan Markovich, Daniel Markovich and many of their family members. The government is well versed in the finances of the Markovich family and Richard Wasserstein. The government understands that the Markovich family and Richard Wasserstein were wealthy long before they decided to operate Compass and WAR. Unlike other cases, where wealth is directly tied to the alleged criminal conduct, that is not the case here. There is no connection between the Markoviches "wealth" and the charges in this case. The only purpose this testimony would serve is to inflame the jury against the defendant. "Use of a defendant's wealth to appeal to class bias can be 'highly improper' and can deprive that defendant of a fair trial." *United States v. Bradley*, 644 F.3d 1213, 1272 (11th Cir. 2011) (citing *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 238 (1940)).

## III. THE GOVERNMENT MUST BE PRECLUDED FROM MISCHARACTERIZING PERMISSIBLE PRACTICES AS CRIMINAL CONDUCT.

The Markoviches Omnibus Motion in *Limine* sought to preclude the government from mischaracterizing legal, lawful, and permissible practices as criminal conduct. The government did not understand the request and went on to argue about all the ways defendant's conduct was illegal. As noted in our Motion, the Markoviches engaged in numerous business practices in the

3

operation of their business. The Markoviches also took direction from medical professional as to medical decisions in their business. The government has sought to characterize many of these perfectly legal activities as sinister or unlawful in nature. The government should be precluded from making such irrelevant, misleading, and prejudicial claims to the jury. Fed. R. Evid. 401, 403. This type of testimony would only serve to mislead and confuse the jury and irreparably prejudice the Markoviches by casting lawful conduct as criminal. *See* Fed. R. Evid. 403.

The Court can exercise its discretion to manage opening arguments and to limit those arguments as appropriate. *See, e.g., United States v. Dominguez*, 735 F. App'x 591, 596 (11th Cir. 1994) (district court did not abuse discretion in directing counsel from airing irrelevant facts during opening statement); *Schwartz v. Sys Software Assocs., Inc.*, 32 F.3d 284, 288 (7th Cir. 1994) (district court did not abuse discretion in directing counsel to "refrain from legal argument in his opening statement"); *Onujiogu v. United States*, 817 F.2d 3,6 (1st Cir. 1987) (the "district court has wide discretion in steadying the Rule 403 seesaw"); Fed. R. Evid. 403.

**IV.   THE COMMUNICATIONS IDENTIFIED BY THE GOVERNMENT ARE INADMISSIBLE AS HEARSAY – AND WERE PRODUCED WELL AFTER A REASONABLE PERIOD OF TIME FOR USE IN THIS TRIAL.**

In their opposition to the Defendants' motion to exclude social media communications as hearsay, the government states as follows: "Broadly speaking, the Government intends to offer the following categories of social media evidence in this case, all of which are readily authenticated by the Government's witnesses, are relevant, and are not hearsay." The government is incorrect. The social media communications that they have identified on their proposed exhibit list are riddled with hearsay communications, which do NOT fall within any exception to the hearsay rule. For example, the government seeks to admit communications that Mario KUSTURA and Elan BAKSHI had, separately, online through various social media apps. The other social media users

4

that they are communicating with are not easily and readily identifiable, and more importantly, it is completely unclear whether any of the communications involved Compass and/or WAR. While the government alleges that KUSTURA and BAKSHI's communications are co-conspirator statements and admissible under Fed. R. Evid. 801(d)(2)(E), they have not shown that such communications even relate to KUSTURA and BAKSHI's status as patients and/or employees of Compass and/or WAR. In fact, KUSTURA and BAKSHI were clearly serving as "marketers" for other addiction treatment facilities, which they have admitted to in debriefs with the government, and such communications likely involved those other facilities – not Compass/WAR or this case at all. Thus, they are not statements made in furtherance of any conspiracy alleged in this case. Moreover, the users who individuals, such as KUSTURA and BAKSHI, are communicating with online are not easily identified. There is no way for the defense to question these persons on the online statements, or to determine if those users were discussing potential admissions to, or marketing of, Compass and/or WAR.

The Defendants also want to be very clear on another point, as it relates to the social media communications that the government seeks to use. This relates to the timing of the government's production of these materials. The government has seemed to have no cut-off date for discovery production. Even as recent as of Monday, July 26, 2021, the defense received discovery related to videos, posts, and other communications involving Christopher GARNTO, KUSTURA, and/or BAKSHI that the government now seeks to admit at trial. While the defense appreciates that the defendants have requested an August 2, 2021 trial date, and will not consent to a waiver of their Speedy Trial rights, doing so does NOT simply permit the government to punish them for seeking to go to trial as soon as possible. The Government charged this case – and they did not have to do so if they were not ready to produce the discovery in a timely manner. In charging this case, filing

a complaint, and seeking a 35-count Indictment, the government should have been ready to go to trial – and produce discovery to the defense – at the time the Indictment was filed (or at the latest, within fourteen (14) days of the arraignment, per the Standing Discovery Order).  Clearly, they were not ready to do so.  They have submitted fifteen (15) discovery productions to the defense – half of which have come within the past three (3) weeks, on the cusp of trial.  The government proffered, during a call with defense counsel approximately two months ago, that further discovery productions would be limited or "not much."  That has not been the case.  The bulk of the social media communications that the government is seeking to use have come late in the game.  While the government may allege that this is recently discovered information on their part, there should be a fair and reasonable discovery cut-off in this matter.

Aside from being filled with hearsay and being inadmissible under the Federal Rules of Evidence, the government should be barred from using such material given the untimeliness of their discovery productions in this matter.  The government charged the defendants in this case prematurely – though they did not need to, as Compass/WAR are still functioning businesses.  The government should have been able to prove those charges on day 1, not with evidence they are now drumming up on the eve of trial.  Not only does that place in the defendants in an untenable position, but it seems to be a strategy of the government's that is simply unfair – to punish the defendants for invoking their Speedy Trial rights, knowing that they will not be able to adequately review the materials given to them at this juncture.  As such, the government should be barred from using such materials in their case-in-chief.  The defense is ready for this trial to commence on August 2nd, but should NOT be placed at a disadvantage for choosing to do so because the government wants to produce materials well beyond a reasonable period of time.

**V. THE GOVERNMENT'S WITNESSES SHOULD BE PRECLUDED FROM TEESTIFYING ABOUT THE ALLEGED LEGALITY OR ILLEGALITY OF CONDUCT.**

Last, the government intends on presenting "evidence that many people at Compass Detox and WAR knew kickbacks were illegal at the time, and thus they took steps to conceal them." The government has not stated who it plans on calling to provide such testimony, or how such persons allegedly "knew" that such conduct was legal or illegal. Such testimony is inappropriate, as it lends to fact witnesses providing legal conclusions. Only the jury can decide the legality of the Markoviches' conduct in this case – based on the evidence admitted and the jury instructions provided, not on a fact witness's alleged views on what was or was not permissible.

The government's witnesses should only be permitted to testify about the conduct that they observed and, unless hearsay, conversations they took part in or overheard. The government witnesses should not be permitted to testify about whether or not they thought such conduct or conversations were legal or illegal. *See* Fed. R. Evid. 701(c) (A lay witness may not offer testimony "based on scientific, technical, or other specialized knowledge," including legal conclusions); *see also, e.g., Montgomery v. Aetna Cas. & Sur. Co*., 898 F.2d 1537, 1541 (11th Cir. 1990) ("A witness...may not testify to the legal implications of conduct; the court must be the jury's only source of law.*"); Ojeda v. Louisville Ladder Inc.*, 410 F. App'x 213, 215 (11th Cir. 2010) (*per curiam*) (finding that plaintiff could not create question of fact on summary judgment by offering legal conclusion because his opinion was inadmissible as improper lay witness testimony under Rule 701(c)). *See also Washington v. Dep't of Transp*., 8 F.3d 296, 300 (5th Cir. 1993) ("[S]peculative opinion testimony by lay witnesses—i.e., testimony not based upon the witness's perception—is generally considered inadmissible.").

## CONCLUSION

For the foregoing reasons, the Markoviches respectfully request that the Court grant the motions in *limine* filed at D.E. 239.

Respectfully submitted,

| | |
|---|---|
| s/ *Marissel Descalzo* | s/ *Vanessa Singh Johannes* |
| Marissel Descalzo (FBN 669318) | Vanessa Singh Johannes (FBN 1028744) |
| Email: mdescalzo@tachebronis.com | E-mail: vjohannes@carltonfields.com |
| Tache, Bronis, and Descalzo, P.A. | Michael S. Pasano (FBN 475947) |
| 150 S.E. 2 Ave., Suite 600 | E-mail: mpasano@carltonfields.com |
| Miami, FL 33131 | CARLTON FIELDS P.A. |
| Tel: 305-537-9565 | 700 N.W. 1st Avenue, Suite 1200 |
| *Counsel for Daniel Markovich* | Miami, Florida 33136-4118 |
| | Telephone: (305) 539-7358 |
| | *Counsel for Defendant Jonathan Markovich* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT, on this 27th day of July, 2021, the foregoing document was filed electronically via CM/ECF, and counsel for the Government received a true and correct copy via such means.

By: */s/ Marissel Descalzo*
**Marissel Descalzo, Esq.**