UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-CR-60020-DIMITROULEAS/SNOW

UNITED STATES OF AMERICA

v.

JONATHAN MARKOVICH, and
DANIEL MARKOVICH,

          **Defendants.**
_____/

## UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO PRECLUDE THE GOVERNMENT FROM MENTIONING FORMER PATIENTS' DEATHS

The United States, through undersigned counsel, hereby opposes Defendant Jonathan Markovich's Motion In Limine to Preclude the Government from Mentioning Former Patients' Deaths (the "Motion"). [D.E. 237] The discussion of certain former patients' deaths directly tied to Defendants' conduct is necessary to contextualize other evidence and is direct evidence of the wrongdoing at Compass Detox and WAR, and is therefore relevant and is not unduly prejudicial. Therefore, the Government should be permitted to introduce such evidence and the Motion, which requests that all such evidence be excluded, should be denied.

## BACKGROUND

J. Markovich owned and operated two substance abuse treatment centers: Compass Detox, which provided inpatient detox and residential treatment; and WAR Network, which provided several levels of outpatient services. J. Markovich and others also co-owned and operated housing associated with WAR. One housing complex, called "Oasis," generally housed partial hospitalization patients. A second housing complex next door typically housed intensive outpatient and outpatient patients (and was often called the "OP House").

As alleged in the Indictment, one way in which J. Markovich and his co-conspirators maintained their health care fraud scheme was by providing patients with inducements—including cash and illegal drugs—in exchange for enrolling in Compass Detox and WAR. They would provide this to patients who were close to discharging from the lowest level of care, or to individuals who were not patients at the time. In order to help such patients appear qualified for the expensive detox level, patient recruiters working under J. Markovich and D. Markovich helped patients get high  Sometimes patient recruiters even took patients out of WAR—or sold them drugs at WAR or the associated housing—in order to induce a relapse so that the patient could go back to Compass Detox. The Government will present evidence that J. Markovich and D. Markovich knew of and endorsed the practice of getting patients high, and the practice of permitting patients to use drugs on the premises or leave to use drugs and return. Thus, while the Government agrees that lengthy evidence about a patient's death that is completely unrelated to Compass Detox and presented for the purpose of inflaming the jury is inadmissible, the Government may seek to introduce evidence of patient deaths that do tie directly to the core conduct at issue in this case. Furthermore, the Government anticipates that its evidence will be attacked by the defense based on the absence of certain patients' testimony, and therefore the Government may need to present evidence of some of these patients' deaths in order to refute such an argument.

## LEGAL STANDARD AND ARGUMENT

"'[I]n a criminal trial relevant evidence is inherently prejudicial; it is only when *unfair* prejudice *substantially* outweighs probative value that the rule permits exclusion.'" *United States v. King*, 713 F.2d 627, 631 (11th Cir. 1983) (citation omitted). "Evidence is admissible if relevant, and evidence is relevant if it has any tendency to prove or disprove a fact of consequence." *United States v. Patrick*, 513 F. App'x 882, 886 (11th Cir. 2013).

Excluding relevant evidence under Rule 403 is an "extraordinary remedy which the district court should invoke sparingly . . . ." *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011) (ellipsis added) (instructing trial courts to weigh evidence "in favor of admissibility"). To the extent this evidence is "prejudicial" to Defendants, it is so only in the sense that "relevant evidence is inherently prejudicial" in a criminal trial. *United States v. Horner*, 853 F.3d 1201, 1213-14 (11th Cir. 2017) (internal citations omitted). And, again, evidence may be excluded under Rule 403 only when "unfair prejudice substantially outweighs probative value." *Id.* at 1214 (internal quotations omitted). Such is not the case here.

The Government does not intend to elicit testimony or present evidence regarding the majority of the patients mentioned in the Motion. However, if the defense implies at any point that the absence of these patients at trial constitutes reasonable doubt or that the Government should have called all of the patients referenced in the counts to testify, the Government will then seek to put on evidence of why it could not call these patients as witnesses.

Moreover, the Government expects its expert witness will necessarily testify that one consequence of untreated or poorly treated opioid addiction is overdose and even death. If Defendants choose to disagree with this, or to argue that the Defendants were somehow unaware of this, the Government will seek to refute such contentions with the following evidence.

Accordingly, at this point, the Government believes its witnesses may testify to the following information regarding three deceased patients:

**Patient A.S./J.R.**: Patient A.S. and his/her former significant other (J.R.) were both patients at Compass Detox. Patient A.S. will recount his/her experience at Compass Detox, as well as his/her observations of physical symptoms that J.R. displayed after J.R. took medications at Compass Detox. In addition, A.S. will testify that they witnessed Jonathan Markovich provide

3

J.R. with a small sum of cash so that they could get high. Unfortunately, J.R. died from an overdose that did not occur at Compass Detox. Therefore, J.R. will not be available to testify and corroborate A.S. The reason why J.R. is unavailable is relevant. A.S. will no doubt be crossed on her credibility and the jury will likely wonder where patient J.R. is, since so much of A.S.'s testimony will be about how the two of them went to Compass Detox and what happened there. While the Government does not intend to go into great detail about the circumstances of J.R.'s death, the Government does expect to elicit the fact that J.R. died of a drug overdose and that such overdose did not occur while J.R. was a Compass Detox patient.

**Patient K.G.**: Patient K.G. was a sibling of a cooperating witness that the Government expects will testify. The Government expects that this cooperator will be crossed at length regarding his credibility, his desire to receive a sentence reduction based on his cooperation, and the like. One avenue of cross will likely be that K.G. became a patient at Compass Detox at some point at the direction of the cooperator, which naturally undercuts the cooperator's testimony that Compass Detox engaged in fraud. The Government should be permitted to address this issue on its direct examination, by allowing the cooperator to explain that K.G. became a patient at Compass Detox and what happened to K.G. as a direct result of his/her time at Compass. In addition, while at Compass Detox, a fellow patient and Compass Detox recruiter (who is also cooperating and can testify about this incident) provided the contact information for the drug dealer who sold K.G. the drugs form which he/she overdosed. This is squarely relevant to the charged kickback and health care fraud scheme because one of the ways in which the Defendants procured patients was through helping them get high. Defendants are aware, as is anyone with common sense, that a drug overdose is a very possible outcome of this practice. The fact that it happened to K.G. while he was not a patient is immaterial given the other strong connections to Compass Detox, primarily

the fact that a patient recruiter for Compass Detox provided the connection to the drug dealer. Indeed, patient recruiters often helped individuals who were not currently patients get high, knowing that they would then be able to take the patient to Compass Detox for inpatient treatment and be paid for that referral.

**Patient J.T.**: Likewise, Patient J.T. was living at the housing associated with WAR Network, in the same room as his/her significant other (who is cooperating in this case and will testify) when he/she overdosed on drugs. J.T. died in the housing that is owned and operated by the Defendants. This death was preventable because the Defendants knew that patients were using drugs at their housing, and, in fact tolerated and encouraged it. J.T. was not a patient at the time of his/her death; instead, just days before, J.T. was discharged from WAR as having successfully completed his/her treatment. The reason he/she continued to be allowed to live at the WAR housing operated by Defendants was primarily because his/her significant other, a cooperator in this case, also lived there. This overdose happened only a few days after the Defendants were charged by complaint in this case and is therefore the natural result of the Defendants' conduct in this case. This is consistent with numerous other relapses of WAR patients that were directly caused by defendants or their conspirators, which landed many patients back at Compass Detox to start the cycle over again. Furthermore, a defendant in this case provided a recording of patient J.T. stating that he/she enjoyed his/her time at Compass Detox and was not offered inducements to attend Compass Detox, in order to convince the Government not to bring charges in this case. J. Markovich knew that this recording was created and provided to the Government, and that it was false. Therefore, the Government will argue that another reason this patient was allowed to live at WAR's housing even while not a patient was because this patient provided false exculpatory information.

**The Evidence Is Relevant To Establishing a Vulnerable Victim Enhancement**

Evidence of acts of patient deaths are also relevant to a sentencing enhancement that will apply if Defendants are convicted; the Vulnerable Victims Enhancement. Thus, the limited evidence the Government seeks to admit is directly relevant.[1] Under Section 3A1.1(b)(1) of the Sentencing Guidelines, an enhancement applies "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." A "vulnerable victim" is defined as a person who is a victim of the offense of conviction and any conduct for which the defendant would be responsible as relevant conduct, and "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1, Application Note 2. "The vulnerability that triggers § 3A1.1 must be an 'unusual' vulnerability which is present in only some victims of that type of crime." *United States v. Davis*, 967 F.2d 516, 524 (11th Cir. 1992). Thus, the vulnerability of the victim is determined on a case-by-case basis. *United States v. Frank*, 247 F.3d 1257, 1260 (11th Cir. 2001).[2]

---

[1] *See United States v. Louis*, 559 F.3d 1220, 1224 (11th Cir. 2009) ("[T]he district court's factual findings for purposes of sentencing may be based on, among other things, evidence heard during trial, undisputed statements in the [presentence investigation report], or evidence presented during the sentencing hearing."); *United States v. Wilson*, 884 F.3d 1355, 1356 (11th Cir. 1989).

[2] The Eleventh Circuit has recently made clear that for the Vulnerable Victims Enhancement to apply, the Government need not show that the Defendants "targeted" the victim; rather, the language from the Guidelines commentary quoted above requires an inquiry only into the Defendants' knowledge of the victim's vulnerability. *United States v. Birge*, 830 F.3d 1229, 1233 (11th Cir. 2016)

## CONCLUSION

For the foregoing reasons, the anticipated references to patients' deaths are relevant and not overly prejudicial to the defense. Therefore, the Motion should be denied.

Dated: July 27, 2021

Respectfully submitted,

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

JOSEPH S. BEEMSTERBOER
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
DEPARTMENT OF JUSTICE

By: */s/ James V. Hayes*
JAMES V. HAYES (FL Bar # A5501717)
Senior Litigation Counsel
JAMIE DE BOER (FL Bar #A5502601)
Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 774-4276
James.Hayes@usdoj.gov
Jamie.DeBoer@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 27, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*James V. Hayes*